THOMAS S. LUX *v.* ENVIRONMENTAL
WARRANTY, INC.
(AC 19035)

Lavery, C. J., and Mihalakos and Peters, Js.

Argued May 8—officially released July 25, 2000

*Richard P. Weinstein,* with whom, on the brief, was *Nathan A. Schatz,* for the appellant-appellee (plaintiff).

*Jeanine M. Dumont,* for the appellee-appellant (defendant).

*Opinion*

PETERS, J. This appeal arises in the context of corporate downsizing that results in termination of the employment of individual employees on the basis of economic conditions unrelated to the quality of the

employees' services during their employment. The employee in this case does not challenge on appeal the propriety of the decision to terminate his employment. He relies instead on various terms in his employment contract to support his claims to recover unpaid severance and vacation pay.

The plaintiff, Thomas S. Lux, brought a three count action against the defendant, Environmental Warranty, Inc., in which he claimed that the defendant (1) had a contractual obligation to pay him severance and vacation pay upon termination, (2) had a statutory obligation pursuant to General Statutes § 31-71a or General Statutes § 31-76k to pay him severance and vacation pay upon termination, and (3) had a contractual obligation to continue to pay him salary and fringe benefits due to its failure to give him proper termination notice. The defendant denied the allegations of the complaint, raised several special defenses and filed a counterclaim. The counterclaim alleged that the plaintiff had engaged in a course of conduct that interfered with the defendant's operations, and that such conduct was a breach of fiduciary duty by the plaintiff in his role as a stockholder in a closely held corporation and one of its key employees.

The court rendered a judgment in favor of the defendant on the plaintiff's complaint and in favor of the plaintiff on the defendant's counterclaim. The plaintiff has appealed and the defendant has cross appealed. On the plaintiff's appeal, we affirm the judgment with respect to severance pay, but remand the case for further articulation with respect to vacation pay. On the defendant's cross appeal, we affirm the judgment.

I

THE PLAINTIFF'S APPEAL

On appeal, the plaintiff pursues his claim for severance and vacation pay under the first and second counts

of his complaint.[1] Without challenging the validity of the facts recited in the court's memorandum of decision, the plaintiff disagrees with the legal conclusions that the court drew therefrom. The gravamen of the plaintiff's appeal is his claim that the court misconstrued the terms of the employment contract between the parties. Under that contract, according to the plaintiff, in the absence of a showing of cause for discharge, the defendant had no authority to terminate the plaintiff's employment without paying him severance pay and accrued vacation pay.

The court's memorandum of decision and the record reveal the following relevant facts. The defendant corporation was formed in 1992 to broker insurance for three carriers that insure against environmental risks associated with commercial real estate. That year, the defendant hired the plaintiff as a senior technical officer to assist in the evaluation of environmental risks for one of the carriers with whom the defendant dealt. The other carriers had their own in-house technical officers.

On April 15, 1994, the plaintiff and the defendant entered into a formal employment contract. Before agreeing to the contract, the plaintiff consulted with private counsel.

In 1995, the defendant learned that one of its three carriers would be ending its business relationship with the defendant. By 1996, this carrier had ceased doing business with the defendant. Unfortunately for the plaintiff, this carrier was the one for which the plaintiff had been acting as a senior technical officer. Accordingly, on January 29, 1996, the defendant informed the plaintiff that his expertise would no longer be needed after March 31, 1996, the expiration date of his contract of employment. The defendant paid the plaintiff's salary

---

[1] The plaintiff does not challenge the validity of the judgment against him on the third count of his complaint.

until that date. The defendant also offered the plaintiff the use of office space and office resources to ease the plaintiff's transition to other employment. The plaintiff availed himself of these services until March 29, 1996, and thereafter did not return for work at the defendant's place of business.

The record does not document any further exchanges between the parties until May 1, 1996, when the plaintiff wrote the defendant to assert his claimed right to severance and vacation pay.[2] The defendant rejected the severance pay claim.[3] With respect to the claim for accrued vacation time, the defendant, while disputing its validity, offered to pay the claim in part. The plaintiff declined to accept this offer.

## A

### Severance Pay

The dispute between the parties concerning the plaintiff's claim for severance pay arises out of the parties' divergent interpretations of the terms of the plaintiff's employment contract. The court concluded, as the defendant had argued, that the defendant had no liability for severance pay because the contract permitted the defendant, with proper notice, to terminate the plaintiff's employment at the expiration of the term of his employment. The plaintiff contends, to the contrary, that the defendant had no such authority because his employment could not be ended except by compliance with the "termination" clause in the contract. The dispositive issue, then, is whether the contract limited the authority of the defendant, in discharging an employee

[2] If the plaintiff was entitled to severance pay, article V of the contract, entitled "Severance," specified that the due date for such payment was "in one installment thirty days following the Termination Date."

[3] The plaintiff also sought an extension of his stock option agreement with the defendant. That request was granted, and the plaintiff purchased 100 shares in July, 1996.

without cause, to only one proper way to effectuate such a discharge.

Our review of the court's judgment in favor of the defendant is plenary. In any case in which the parties dispute the meaning of definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 91–92, 709 A.2d 540 (1998); *Levine* v. *Massey*, 232 Conn. 272, 277–78, 654 A.2d 737 (1995); *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995); *Mulligan* v. *Rioux*, 229 Conn. 716, 740, 643 A.2d 1226 (1994); *Morales* v. *Pentec, Inc.*, 57 Conn. App. 419, 438, 749 A.2d 47 (2000).

The parties agree, as the court held, that their dispute must be resolved by a construction of three provisions in the employment contract. One provision is article II, § 2.2, denominated "Term of Employment." The second provision is article II, § 2.6, denominated "Termination." The third provision is article V, denominated "Severance."

Section 2.2[4] describes the plaintiff's term of employment as having commenced on April 1, 1994, and continuing until March 31, 1996, "unless sooner terminated." It also states that subject to certain provisions in the termination article of the contract, the employment

---

[4] Section 2.2 of article II states: "Term of Employment. EWI agrees to continue the employ of Employee, and Employee agrees to accept such employment with EWI for a term commencing April 1, 1994 (the 'Commencement Date') and continuing until March 31, 1996 (the 'Expiration Date'), unless sooner terminated as provided in this Agreement (the 'Employment Period'). In addition, subject to Sections 2.6.1 (e) and (f), this Agreement shall be extended automatically and without further action for an additional one (1) year period, and thereafter shall continue to be extended for successive one (1) year periods as of each anniversary of the Expiration Date (in any such case, the 'Extension Period'). Any Extension Period shall be included with the definition of 'Employment Period'."

agreement "shall be extended automatically" for additional one year periods.

Section 2.6.1[5] states that "[t]he employment period shall be terminated upon the first to occur of the following events . . . ." Only one of the stated "events" is arguably relevant. Section 2.6.1 (e) permits the defendant, "at any time after the Expiration Date" to terminate the plaintiff's employment ten days after the defendant so notifies the plaintiff. This section applies to termination "for any reason or no reason."[6]

Finally, article V[7] entitles an employee to severance pay in the event of a termination "pursuant to the provision of Section 2.6.1 (e)." It describes the manner in which such severance pay is to be calculated and the time when it is to become payable.

---

[5] Section 2.6.1 of article II states: "Termination. The Employment Period shall be terminated upon the first to occur of the following events:

"(a) Automatically upon the death of Employee;

"(b) By EWI upon the date of determination by EWI of the 'permanent disability' of Employee as hereinafter provided;

"(c) By EWI upon the date of written notification by EWI of Employee that his employment will be terminated for 'Cause' as hereinafter defined;

"(d) By Employee upon the date on which Employee notified EWI that his employment will be terminated for 'Cause' as hereinafter defined;

"(e) By EWI at any time after the Expiration Date, upon the date ten (10) days following written notice by EWI to Employee of termination for any reason or no reason; or

"(f) By Employee at any time after the Expiration Date, upon the date thirty (30) days following written notice by Employee to EWI of termination for any reason or no reason."

[6] Presumably, the defendant had no authority to terminate the plaintiff's employment without cause during the initial two year term of the employment contract.

[7] Article V, entitled "Severance," states: "In the event Employee is terminated by EWI pursuant to the provisions of Section 2.6.1 (e) hereof, Employee will receive a severance payment equal to two months of his current base salary as of the effective date of termination multiplied by the number of full years of service of Employee (measured from Employee's employment commencement date), provided the maximum period of severance pay shall be six (6) months (the 'Severance Pay'). The Severance Pay will be paid to Employee in one installment thirty days following the Termination Date."

The issue raised by these three provisions is whether, regardless of the expiration date in the agreement, the agreement precludes the employer from ending the employment of any employee "for any reason or no reason," unless the employer follows the termination procedures set out in § 2.6.1 (e). If that were so, any no fault termination would require a ten day notice and severance pay. As the trial court aptly observed, such a construction of the contract language is difficult to square with § 2.2. Although the latter article contemplates the possibility of automatic renewals, it does not mandate them. The court construed this language as authorizing the defendant, upon giving timely notice of nonrenewal, to terminate the agreement of employment at the end of any term of employment without liability for severance pay. We agree with the court.

The plaintiff argues that, properly construed, the employment agreement neither permitted its term to expire nor empowered the defendant to fail to renew it. In his view, the absence of an express provision for expiration or nonrenewal is dispositive.

He claims that the automatic renewal provision in § 2.2[8] requires the employment contract to continue in force until it is terminated in accordance with § 2.6.1 (e).

---

[8] The plaintiff also invokes the parol evidence rule in support of his construction of the agreement. In the case of a fully integrated contract, usually manifested by its inclusion of a merger clause, the parties are deemed to have agreed that the terms of their written contract supersede all prior and contemporaneous communications between them. Under such circumstances, a court may not add additional terms to the contract. See, e.g., *Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 746 A.2d 1277 (2000). In this case, however, the plaintiff has not pointed out any merger clause in the contract. Further, the plaintiff does not indicate that he presented to the trial court any argument based on the parol evidence rule, and the trial court's memorandum of decision does not address the issue. We, therefore, decline to address it. Practice Book § 60-5; *Crest Pontiac Cadillac, Inc. v. Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996).

It is common ground that this court must reconcile the provisions of § 2.6.1 (e) with those of § 2.2. The latter section describes the commencement date and the expiration date of the plaintiff's contract with the defendant. It further provides that the stated expiration date is effective unless the plaintiff's employment is "sooner terminated." Section 2.2 expressly requires compliance with § 2.6.1 (e) and (f) upon renewal of the employment agreement and makes such renewal automatic in the event of inaction by the defendant. We are not persuaded that the defendant was required by the contract to acquiesce in the automatic renewal of the employment contract. The more reasonable construction of the contract is that it permitted the defendant to take steps, i.e., timely notice, to avoid automatic renewal and thereby to make the stated expiration date effective. Otherwise, little meaning would attach to the clause setting an effective date. Such a construction comports with the well established rule of construction that, when interpreting a contract, "we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 843, 669 A.2d 1221 (1996); *Tremaine* v. *Tremaine*, 235 Conn. 45, 57, 663 A.2d 387 (1995); *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 175, 622 A.2d 545 (1993); *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 116, 584 A.2d 1172 (1991).

In effect, the plaintiff's argument would convert the plaintiff's employment agreement into a contract for permanent employment or for an indefinite time period, subject only to termination in accordance with § 2.6 of article II. That argument would not avail the plaintiff because, under case law of long standing, contracts for permanent employment or for an indefinite term are terminable at will. See, e.g., *Torosyan* v. *Boehringer*

*Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 14, 662 A.2d 89 (1995); *Coelho* v. *Posi-Seal International, Inc.*, 208 Conn. 106, 118, 544 A.2d 170 (1988); *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 211 n.1, 520 A.2d 217 (1987); *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 201 n.6, 520 A.2d 208 (1987); *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 562–63, 479 A.2d 781 (1984); *Turrill* v. *Erskine*, 134 Conn. 16, 21, 54 A.2d 494 (1947); *Emerick* v. *Connecticut General Life Ins. Co.*, 120 Conn. 60, 65, 179 A. 335 (1935). The only relevant exception to that rule is "definitive contract language" to the contrary. *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, supra, 15. As we have observed previously in this opinion, there is no contract language in this case that definitively demonstrates that the parties had agreed to automatic renewal of the employment agreement regardless of the defendant's express notice of non-renewal.

We conclude, therefore, that the plaintiff's claim for the recovery of severance pay cannot be sustained. We affirm the judgment of the court on that issue.

B

Vacation Pay

In the first count of his complaint, the plaintiff sought, in addition to severance pay, vacation pay allegedly accrued prior to his termination. The court's findings on this issue are opaque. At one point, the court apparently concluded that the plaintiff was entitled to five days of vacation pay, until March 31, 1996, diminished only by two personal days for funeral leave. It calculated the amount due as $1097.25. Thereafter, however, the court noted that the plaintiff had not raised his claim for vacation pay until several weeks after the expiration date of his contract. The court also found that, once alerted to the plaintiff's claim, the defendant, perhaps

without conceding liability, offered to compensate the plaintiff for three days of vacation pay, in the amount of $1097.25.[9] The plaintiff rejected that offer.[10]

Without ruling further on the plaintiff's contract claim for vacation pay, the court concluded that the plaintiff's statutory claim could not be sustained in light of the defendant's offer of payment. The court then rejected the plaintiff's claims for relief in their entirety.[11]

On this state of the record, we cannot determine how the court ruled on the plaintiff's contractual claim for vacation pay in count one. Although it would have been more prudent for the plaintiff to have filed a motion for articulation to perfect the record on appeal; see Practice Book § 66-5; we decline to rest our judgment on that ground. As the defendant's various offers of payment indicate, a trier of fact reasonably might determine that the defendant has not categorically denied its liability for some amount of vacation pay. Certainly, the court made no finding to the contrary.

We conclude, therefore, that the plaintiff's contract claim for vacation pay should be determined, on remand, by a focused inquiry into the extent, if any, to which this claim should be sustained. Accordingly, the case is remanded for an articulation of the trial court's ruling with respect to vacation pay.

---

[9] The defendant's brief characterizes this offer as nothing more than a calculation of the amount of vacation pay that was at issue. That proposition is not sustained by the trial court's finding.

[10] On July 2, 1996, the defendant, again denying liability, made another proffer of payment by tendering a check in the amount of $789.54. The plaintiff rejected this offer as well and returned the check.

The fact that this second offer was in the form of a tender of payment does not discharge the defendant from its contractual obligation if it is held to have liability for vacation pay. Refusal of a tender of payment does not discharge a debt. *State* v. *Lex Associates*, 248 Conn. 612, 629, 730 A.2d 38 (1999); *Bronson* v. *Leibold*, 87 Conn. 293, 300, 87 A. 979 (1913).

[11] The plaintiff has not appealed from the court's rejection of his statutory claim.

## II

## THE DEFENDANT'S CROSS APPEAL

The defendant's counterclaim alleged that the plaintiff, as a minority shareholder in the defendant, had engaged in conduct that interfered with, harassed and embarrassed the defendant, and that such conduct was a breach of the plaintiff's fiduciary duty to the defendant. The conduct of which the defendant complained involved the sending of a letter by the plaintiff's attorney to the defendant's attorney. That letter contained allegations falsely impugning the integrity of the defendant's president.[12] That conduct was actionable, according to the defendant, even though the plaintiff was not a majority shareholder,[13] because the defendant is a closely held corporation. The defendant sought damages. The plaintiff did not dispute the underlying factual allegations in the counterclaim but denied that he had any fiduciary duty to the defendant. Accordingly, the plaintiff denied the validity of its claim for damages.

In its memorandum of decision, the court recited the undisputed facts. Without determining whether the plaintiff was a fiduciary as a result of his minority stockholding, the court concluded that the plaintiff's conduct

---

[12] On May 8, 1997, Richard P. Weinstein, attorney for the plaintiff, wrote to Jeanine M. Dumont, attorney for the defendant, as follows: "I have reason to suspect that substantially large sums of money are being extracted by Mr. Perry [the defendant's president] from Environmental Warranty, Inc., and that perhaps he has even set up one or more phantom companies. I will be compelled to pursue same in the event we secure a judgment or are unable to satisfy our claims in full. Also, we will reserve the right to pursue those remedies at the present time to the extent that we develop appropriate information.

"If you should have any questions, please feel free to contact me."

[13] One of the clauses in the employment contract between the plaintiff and the defendant gave the plaintiff an option to purchase shares of the defendant. The plaintiff exercised that option in July, 1996, to acquire 100 shares of the defendant's stock. The court found that, as a result, the plaintiff became one of three common shareholders in the defendant. According to the defendant, the plaintiff became a 10 percent shareholder in the defendant.

was not a breach of fiduciary duties. It focused on the fact that the defendant's claim arose out of a communication between the parties' attorneys. There was no allegation that the plaintiff had published his accusations in any other way. The defendant's president, however, published the letter to the defendant's board of directors, and then expended corporate time and energy to disprove its allegations.

The court held that the disclosure by the defendant's president did not constitute a breach of a fiduciary duty by the plaintiff. Although the court, therefore, did not have to reach the issue of whether the defendant had proven its claim for damages, it observed that the defendant had failed to make the requisite evidentiary showing. It noted that none of the allegations of injury to the defendant had been quantified or priced out. Accordingly, the court rendered a judgment in favor of the plaintiff on the counterclaim.

In its cross appeal, the defendant challenges both the evidentiary basis for the court's ruling and the legal conclusion reach by the court. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Berger* v. *Fitzgerald*, 55 Conn. App. 138, 145, 739 A.2d 287, cert. denied, 251 Conn. 922, 742 A.2d 358 (1999); Practice Book § 60-5.

The defendant's challenge to the court's factual findings focuses not on the findings the court made but on the findings it did not make. According to the defendant, it presented credible evidence that the plaintiff harassed his former coemployees in order to pressure the defendant to settle his claimed right to severance and vacation pay. The only evidentiary support for this proposition that the defendant cites is the testimony of Natalie Chausse. Chausse testified that, on several occasions, the plaintiff had made her uncomfortable by speaking to her about his lawsuit with the intent of extracting information that would assist him in the pursuit of his claim.[14] We agree with the plaintiff that the court reasonably might have found this testimony to be insufficient to substantiate the defendant's claim of harassment. The court's finding of facts was not clearly erroneous.

The defendant's challenge to the legal conclusions of the court decries the validity of the court's holding that the letter written by the plaintiff's counsel to the defendant's counsel did not establish a breach of fiduciary duty by the plaintiff. The plaintiff now concedes that the allegations in the letter were incorrect.

We are doubtful that a minority shareholder, even in a closely held corporation, is a fiduciary. See *Banks* v. *Vito*, 19 Conn. App. 256, 262, 562 A.2d 71 (1989); W. Knepper & D. Bailey, Liability of Corporate Officers and Directors (5th Ed. 1993) § 1-13, pp. 31–33. The court did not decide that issue, and we need not address it.

---

[14] Natalie Chausse testified that, on several occasions, she had encountered the plaintiff at the local post office. She felt uncomfortable in his presence because he asked her questions about how things were going with the company, financially and otherwise, and asked her to comment about "this lawsuit and Charlie." She also testified that, when the plaintiff came to the office to make his COBRA payment for interim health insurance, he would start asking questions. Duly instructed by the defendant, Chausse did not reply to the plaintiff's questions.

The defendant claims that the court improperly concluded that the plaintiff's conduct was not in breach of his fiduciary obligation, if any, because, according to the defendant, the plaintiff's letter was a publication of his charges against the defendant's president in a manner that was reckless and malicious. The defendant makes two arguments. First, it disputes the court's determination that it was the defendant's president, rather than the plaintiff, who published the plaintiff's erroneous allegations. Second, it contends that the court overlooked additional evidence presented at trial to support the defendant's claim that the letter established a breach of fiduciary duty.

The defendant argues that the court should have held that the fact that the plaintiff's counsel sent the letter was sufficient to establish the publication of allegations contained therein. The defendant claims that the court was legally bound to recognize that the president was obliged to disclose the plaintiff's allegations to the defendant's board of directors, especially because the defendant was then engaged in negotiating the sale of the majority of its stock. The defendant's criticism of the court's ruling with respect to publication may well be right.

Even if that subordinate conclusion was improper, however, we are not persuaded that the defendant has produced incontrovertible evidence to support its claim of breach of fiduciary duty. The fact that the plaintiff's allegations were incorrect does not demonstrate that they were reckless or malicious. The court reasonably could have concluded, as it did, that the plaintiff merely misconstrued the import of documents referring to a past corporate initiative that the corporation, unbeknownst to the plaintiff, had chosen not to pursue. The court was not obligated to conclude that, on its face, sending the letter was a breach of any fiduciary duty that the plaintiff might have owed the defendant.

The defendant maintains, however, that the court should have considered, as evidence of recklessness and malice, two additional matters of record. One was that the letter was a threat to sue the defendant's president personally. The second was that the plaintiff had never retracted his incorrect allegations. Even if we were to agree with the defendant about the impropriety of the threat contained in the letter, that would not suffice to establish the defendant's claim. It was reasonable for the court to conclude that, in the midst of litigation, a threat to seek further judicial relief in the event of an unpaid judgment does not demonstrate harassment or a breach of fiduciary duty.

We similarly disagree with the defendant's contention that the court was required to assign dispositive weight to the fact that the plaintiff, although asked to retract his allegations of misconduct, declined to do so. The premise for the defendant's argument is its assertion that the plaintiff lacked any factual basis for his incorrect allegations. The court, however, found to the contrary. It found that the plaintiff's claim was the result of the plaintiff's extrapolation "from [the defendant's] financial statements and assumptions as to [the salary of the defendant's president." Apparently, the court deemed credible the plaintiff's testimony that be believed it to be "highly unlikely but possible" that his allegations were wrong.

In light of the record as a whole and the findings of the court, we concur in the court's conclusion that the defendant failed to prove that the plaintiff breached a fiduciary duty.

Even if we had any doubt about the merits of this conclusion, we would nonetheless affirm the judgment because we are persuaded that the defendant has failed to prove the damages that it incurred as a result of the

plaintiff's alleged breach of his alleged fiduciary duty to the defendant.

The court concluded that the defendant had not provided evidentiary support to establish its claim of harm. The court found that the defendant had not introduced specific information to demonstrate how the defendant's prospects for sale of its company were impaired by the plaintiff's incorrect representations. The court further found that the "time spent by [the defendant's president to rebut the plaintiff's allegations] was not quantified or priced out." It summed up by stating: "Had the issue of damages been reached, the court would have been left to speculate."

The defendant challenges the validity of the court's conclusion. It points to the evidence given by the defendant's president that he had spent two weeks addressing the issues raised by the plaintiff's letter. The defendant asserts that this evidence sufficed to establish damages because "in a small company, such a loss of time by the president means an immediate loss of money to the company in terms of sales." The defendant does not, however, cite to any evidence of record about a decline in the defendant's sales or about expenses incurred or opportunities forgone as a result of the president's inability to focus directly on company business during this time. As was the court, we are at a loss to discern a dollar amount that would measure the harm that the defendant claims to have suffered. The defendant accurately describes the law of damages as permitting a claimant to prevail by presenting only that "degree of proof of damages which the facts permit, but no more." *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 278–79, 439 A.2d 314 (1981). *Bead Chain Mfg. Co.* does not, however, allow a litigant to assert a claim for damages that lacks any quantifiable basis whatsoever. Id.

We affirm the judgment of the court in favor of the plaintiff on the defendant's counterclaim. The defendant has failed to establish a factual foundation either for his claim of breach of fiduciary duty by the plaintiff or for his claim of damages caused to the defendant.

The judgment is affirmed except for the plaintiff's claim to recover accrued vacation pay. On the issue of vacation pay, the case is remanded to the trial court for an articulation of whether the plaintiff is entitled to recover vacation pay and, if so, what the amount of his recovery should be.

In this opinion the other judges concurred.