NEWS AMERICA MARKETING IN-STORE, INC. *v.*
STEVEN MARQUIS ET AL.
(AC 24808)

Dranginis, Bishop and Dupont, Js.

not determine whether, if true, that performance was deficient. See, e.g., *Nardini* v. *Manson*, supra, 207 Conn. 124.

Argued September 21—officially released December 21, 2004

*A. Robert Fischer*, with whom was *Jeffrey M. Vona*, for the appellant (plaintiff).

*Michael N. LaVelle*, for the appellee (named defendant).

*Jonathan B. Orleans*, with whom, on the brief, were *David P. Atkins* and *Marcy Tench Stovall*, for the appellee (defendant Floorgraphics, Inc.).

*Opinion*

DUPONT, J. This is an appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants in an action brought by News America Marketing In-Store, Inc. (News America), against its former employee, the defendant Steven Marquis, and his current employer, the defendant Floorgraphics, Inc. (Floorgraphics), alleging (1) breach of the duty of loyalty, (2) violation of the Uniform Trade Secrets Act (trade secrets act), General Statutes § 35-50 et seq., (3) conversion, (4) statutory theft, and (5) unauthorized access to and misuse of the plaintiff's computer system in violation of General Statutes §§ 52-570b and 53a-250 and 53a-251.[1] We affirm the judgment of the trial court.

---

[1] The plaintiff's complaint also alleged violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and tortious interference with contractual relations, but neither claim was briefed on appeal and both are deemed abandoned. The only cause of action involving both defendants is that alleging a violation of the trade secrets act. The other causes of action solely concern the individual defendant, Marquis.

I

BACKGROUND

The issues raised by the plaintiff involve common-law and statutory causes of action. Some of the statutory causes of action are themselves rooted in common law. All of the causes of action rest on the principal-agent relationship between Marquis and the plaintiff. They involve the tenet that agents act for the benefit of their principal in all matters connected with the agency. The primary issue of the five discrete causes of action to be resolved on appeal concerns whether the plaintiff can succeed in its quest for liability on the basis of a statutory or common-law breach against either defendant without also identifying and proving a specific harm as an element of each cause of action. Secondary issues are whether, without a specific monetary loss, the plaintiff is entitled to nominal damages, punitive damages or attorney's fees.

News America claims on appeal that the court improperly concluded that (1) Marquis did not breach his duty of loyalty because specific loss is an essential element in a claim of breach of the duty of loyalty, (2) the plaintiff did not identify an actual loss under the trade secrets act and was not entitled to attorney's fees under that act, (3) the plaintiff suffered no actual loss in connection with its claim for statutory theft pursuant to General Statutes § 52-564, (4) the plaintiff suffered no harm or actual loss in connection with its claim for conversion, (5) the plaintiff was not entitled to attorney's fees in connection with its claim of unauthorized access to and misuse of its computer system, and (6) the court improperly concluded that the plaintiff was not entitled to nominal damages in connection with any or all of its claims.

The following facts, as found by the court in its memorandum of decision, are relevant to our resolution of

the plaintiff's claims. News America and Floorgraphics are competitors in the in-store advertising and promotional products industry. Both companies are in the business of providing in-store advertising to retail chain-stores. In-store advertising companies lease space in retail stores for advertising products such as shopping cart placards, shelf advertising, floor decals and coupon dispensers, which are, in turn, sold to product manufacturers for advertising their products. The in-store marketing companies receive their revenue from the manufacturers and advertisers and pay the retail stores for the use of the space.

News America employed Marquis as a vice president of retail marketing for the north central region of the United States. As vice president, Marquis' responsibilities included contracting with retailers to acquire space in which to place News America's products. In addition, Marquis served as the chairperson of a committee that studied the way that News America paid retailers. On Monday, March 6, 2000, Marquis submitted his resignation to News America. No confidentiality, noncompetition or nonsolicitation agreement existed between News America and Marquis. On March 8, 2000, Marquis commenced employment with the defendant Floorgraphics as a vice president of retail sales and general manager of new programs and products. Marquis' employment with Floorgraphics was defined in part by an offer memorandum dated March 4, 2000. The offer memorandum, signed by Marquis and Floorgraphics, required that Marquis not take or pass along any written materials of any type from News America. Floorgraphics indicated in the agreement that it had been warned by the plaintiff's attorney not to acquire any confidential information or trade secrets from Marquis. The agreement stated that Floorgraphics' interest in hiring Marquis was unrelated to such knowledge.

On Sunday, March 5, 2000, the day before submitting his resignation, Marquis went to the offices of News America in Norwalk, where he made copies of e-mail messages that he had sent or received and also made a copy of store list material. The court could not determine from the evidence presented at trial how much of the store list Marquis actually took. The comprehensive store list was separated into three subsets: Supermarkets, drugstore chains and mass merchandise. The court reasoned that because Marquis destroyed all of the material he took from News America, Marquis had taken the News America comprehensive store lists. Marquis also made copies of material that he used in presentations to retailers. News America did not require retailers to sign confidentiality agreements as part of those presentations. The court observed that it was not clear whether Marquis took generic or customized presentations that included revenue projections. Again, because Marquis destroyed that information, the court concluded, by applying an adverse inference against him, that Marquis did take customized presentations containing revenue information.

Marquis placed all of the material that he had copied in a copy paper box and transported the box, along with his personal effects, to his home. After arriving at his home, Marquis took the box containing the copies and placed it in his garage. At some point, but by March 21, 2000, at the latest, Marquis learned that he was going to be sued by News America. Upon learning that he was going to be sued, Marquis decided not to retain the copies of News America material that he had taken. Either on the evening of March 21 or early in the morning of March 22, 2000, Marquis placed the box containing all of the copies made at News America for pickup by the trash collector, which occurred on March 22, 2000. Marquis did not look at any of the copies made at News America from the time he copied them until

the time he threw them out, did not make any duplicates of such copies and did not discuss any of those documents with anyone at Floorgraphics. Furthermore, there was no evidence presented that he provided any News America documents to Floorgraphics.

The court found that the customized store lists constituted a trade secret, but that the presentations to retailers and a retailer status report, containing information regarding negotiations and contracts with retailers, were not trade secrets. The judgment for the defendants was based on the lack of evidence that Floorgraphics had acquired any secret information from Marquis or that he had disclosed any trade secret material to Floorgraphics. The court also stated that the only other act claimed by the plaintiff to be a breach of the duty of loyalty by Marquis was that Marquis, on the morning of March 6, 2000, the day he tendered his resignation, discussed with another vice president the possibility of her leaving the employ of the plaintiff and going to work for Floorgraphics. She did not change employment, however, and as of the date of trial, was still employed by the plaintiff. After Marquis left the plaintiff's employ, the plaintiff paid $4990 to a third party to investigate the contents of Marquis' computer. An employee of the plaintiff also joined the investigation, and approximately $8653 of his salary was prorated to the investigation.

## II

## DUTY OF LOYALTY OF MARQUIS

The plaintiff first claims that the court improperly concluded that Marquis did not breach his duty of loyalty to the plaintiff. Specifically, the plaintiff argues that (1) the court's conclusion is logically incorrect, given the specific facts found by the court, and (2) identification of a specific loss is not an essential element of a cause of action for breach of the duty of loyalty.

We note first that the plaintiff does not claim that the court's conclusion that it suffered no harm as a result of Marquis' misconduct was clearly erroneous. Rather, the plaintiff contends that the court, as a matter law, improperly concluded that specific loss is a necessary element of a cause of action for breach of the duty of loyalty. We agree that whether specific harm is an element of that cause of action is a question of law. There is no Connecticut appellate authority addressing that precise point of law of which we are aware. The question is one of first impression.

The first count of the complaint, alleging a breach of the duty of loyalty, is a common-law cause of action, independent of any statute. News America claimed that Marquis breached that duty by soliciting another employee of News America for employment with Floor-graphics and by using confidential information and trade secrets to compete with News America, which constituted gross misconduct and which was "radically unfaithful" to the trust invested in him by News America. As a result of the alleged breach of the duty of loyalty, News America claimed that it was "severely and irreparably damaged."

The chief argument of Marquis is that although he made copies of e-mail messages that he had sent or received and also made a copy of store list material, he destroyed them without discussing them with anyone or making additional copies. He therefore claims that the plaintiff had no cause of action against him because the plaintiff suffered no harm. The court concluded, on the facts, that Marquis had breached the duty of loyalty, but that no specific monetary or quantifiable loss had occurred and, therefore, it denied any damages to the plaintiff. The parties disagree as to whether proof of a specific loss is an essential element in a cause of action for breach of the duty of loyalty owed by an employee to his employer.

A party may recover for breach of loyalty in tort. In a tort action, harm is a necessary element of the prima facie case. 2 Restatement (Second), Agency, Liability for Loss Caused § 401, comment (b) (1958). If a party has suffered no demonstrable harm and, therefore, has no cause of action in tort, that party may be entitled, however, to nominal damages for breach of contract or to recover compensation paid during the period of the alleged breach. "A failure of the agent to perform his duties which results in no loss to the principal may subject the agent to liability for nominal damages for breach of contract . . . to liability for any profits he has thereby made . . . to discharge . . . or to loss of compensation . . . but not to an action of tort." (Citations omitted.) Id.

The relationship of principal and agent implies trust or confidence by the principal in the agent, and the agent is obligated to exercise the utmost good faith, loyalty and honesty toward his principal or employer. 3 Am. Jur. 2d, Agency § 205 (2002). The general principle for the agent's duty of loyalty according to the Restatement is that the agent must act solely for the benefit of the principal in matters connected with the agency. "The general duty of loyalty includes . . . the duty not to compete . . . and the duty not to disclose confidential information." M. Szto, "Limited Liability Company Morality: Fiduciary Duties in Historical Context," 23 Quinnipiac L. Rev. 61, 100–101 (2004).

The court expressly found that the plaintiff had failed to adduce any evidence of harm resulting from the alleged acts of misconduct by Marquis. The court found that there was no evidence that Marquis had used confidential information to compete with the plaintiff, although he had breached his duty of loyalty by soliciting another employee for employment while still employed by the plaintiff. The latter breach, however, resulted in no monetary harm. Removing documents

on the eve of resignation from employment, on a Sunday, and trying to induce a fellow employee to leave the principal to become employed by a competitor are, of course, breaches of the duty of loyalty. Such breaches, however, do not automatically convert to a judgment of liability for a plaintiff without proof of harm. One of the elements of a cause of action in tort for a breach of loyalty is actual harm, without which the cause of action is incomplete.

If the plaintiff did not prove specific, quantifiable harm, it cannot recover any damages in tort for the alleged delicts of the defendant because harm is an element of the plaintiff's cause of action in tort. Restatement (Second), supra, § 401, comment (b). In an analogous case, the absence of any actual loss to the plaintiff is fatal to a claim for tortious interference with a business relationship. *Appleton* v. *Board of Education*, 254 Conn. 205, 212–14, 757 A.2d 1059 (2000). The plaintiff does not challenge the validity of the facts found in the court's memorandum of decision, but disagrees with the legal conclusions the court drew from those facts. The question, then, is whether the plaintiff did prove an actual or specific quantifiable loss.

The plaintiff argues that although the facts were found properly by the court, as a matter of law, the plaintiff did sustain quantifiable harm as a result of the taking of the plaintiff's documents. The plaintiff cites two reasons in support of its argument that it sustained a quantifiable loss. The plaintiff, in its complaint, sought a return of compensation paid to Marquis during the time of his transgressions. No evidence, however, was introduced to indicate the dollar value of Marquis' compensation for any time, including March 5, 2000, when he took the documents, and March 6, 2000, when he resigned.

The second reason cited by the plaintiff in support of its claim that it suffered a quantifiable monetary

loss is that it paid a total of $13,643 to investigate the contents of Marquis' computer, which it claims is a compensable loss. The plaintiff finds solace in *Lux* v. *Environmental Warranty, Inc.*, 59 Conn. App. 26, 755 A.2d 936 (2000). That case is distinguishable on its facts, however, and because its discussion as to monetary harm is dicta. In *Lux*, the corporate principal expended investigatory funds to rebut false allegations in a letter from a minority shareholder's attorney to the corporation's lawyer. Id., 37 & n.12. The letter alleged that the president of the corporation had taken large sums of money from the corporation. Id., 37 n.12. Although *Lux* implies that such sums could suffice to establish damages in a claim for breach of the duty of loyalty, if a minority shareholder is deemed to have a fiduciary relationship with the corporation, no dollar amount was introduced into evidence as to the cost involved in the investigation. Id., 42. The corporate principal could not, therefore, recover damages.

In this case, the plaintiff showed a dollar amount spent on the investigation, but no indication that the act of Marquis, namely, the taking of the corporate material, involved anyone other than Marquis. In *Lux*, the money was spent to investigate the truth of the allegations made by the minority shareholder's attorney in a letter to the corporation's attorney. The letter was given to the corporation's board of directors by the corporation's president. Id., 38. The money spent for investigation in this case was not directly connected to Marquis' breach of the duty of loyalty, but was more in the nature of preparation for a lawsuit by the plaintiff against Marquis. We therefore conclude that the judgment in favor of Marquis on the plaintiff's claim of breach of the duty of loyalty, sounding in tort, must be affirmed.

To the extent that the plaintiff claims nominal damages for a breach of contract, within the first count of

its complaint, we also affirm the judgment in favor of Marquis. He and the plaintiff had no written contractual relationship of any sort, and the plaintiff did not allege any implied contract in that count. Furthermore, nominal damages cannot be awarded on the plaintiff's cause of action for the intentional tort of breach of the duty of loyalty because actual harm or loss was a necessary but unproven element of that cause of action. Without a judgment of liability, nominal damages are not appropriate. See *Connecticut Employees Union "Independent," Inc.* v. *Connecticut State Employees Assn., Inc.*, 183 Conn. 235, 251–53, 439 A.2d 321 (1981).

The plaintiff sought punitive damages at common law in its prayer for relief. Although the plaintiff alleged in count one that Marquis had committed tortious, illegal acts constituting "gross misconduct" and that he was "radically unfaithful" to the trust placed in him by the plaintiff, the plaintiff is not entitled to such damages for two reasons. First, without an underlying judgment of liability, the plaintiff cannot recover punitive damages at common law. Second, punitive damages cannot be awarded in tort cases unless the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 489, 234 A.2d 825 (1967). The evidence in this case did not show such an indifference. We affirm the judgment in favor of Marquis as to count one of the complaint to the extent that it incorporates a denial of punitive damages in the plaintiff's basic claim in tort or contract.

## III

## BREACH BY BOTH DEFENDANTS OF UNIFORM TRADE SECRETS ACT

The plaintiff claims that the court improperly concluded that both defendants did not violate the trade secrets act. Specifically, the plaintiff argues that

although the court properly concluded that Marquis had "misappropriated a trade secret," it improperly concluded that the plaintiff failed to show the requisite actual loss under the trade secrets act. In addition, the plaintiff argues that the court improperly concluded that the plaintiff was not entitled to attorney's fees under that act.

As a threshold matter, we note that a court's findings of fact will be reversed only if they are clearly erroneous. *Smith* v. *Snyder*, 267 Conn. 456, 462, 839 A.2d 589 (2004). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Berube*, 84 Conn. App. 464, 469–70, 854 A.2d 53, cert. denied, 271 Conn. 929, 859 A.2d 583 (2004).

"We begin our analysis by restating some basic principles of the law governing trade secrets. Generally speaking, in the absence of a restrictive covenant, a former employee may compete with his or her former employer upon termination of employment. . . . Even after the employment has ceased, however, the employee remains subject to a duty not to use trade secrets, or other confidential information, which he has acquired in the course of his employment, for his own benefit or that of a competitor to the detriment of his former employer." (Citation omitted; internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 68–69, 752 A.2d 1037 (1999).

According to General Statutes § 35-51 (d), a trade secret is "information, including a formula, pattern,

compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico*, supra, 251 Conn. 69–70. In addition, General Statutes § 35-53 (a) provides in relevant part: "In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. . . ."

The primary issue for us is whether the costs incurred by the plaintiff, in connection with its investigation of what, if any, proprietary information Marquis might have taken without authorization, in order for the plaintiff to determine whether it could or should pursue litigation, are actual losses within the purview of § 35-53 (a).

A

We first address the plaintiff's claim against Marquis of violation of the trade secrets act. The plaintiff argues that the court improperly concluded that the plaintiff (1) did not demonstrate the requisite actual loss in order to prevail on its trade secrets claim[2] and (2) was not entitled to attorney's fees. Specifically, the plaintiff argues that Marquis' conduct forced the plaintiff to

---

[2] That is a different but related claim to the one discussed in part II. Although we concluded in part II that the cost of investigation was not, at common law, on the facts of this case, monetary harm proximately caused by Marquis' breach of the duty of loyalty, we now consider the characterization of the same expenses under the statutory cause of action for violation of the trade secrets act. We keep in mind, however, the fact that the trade secrets act has been interpreted as a codification of the common law. See *Elm City Cheese Co.* v. *Federico*, supra, 251 Conn. 88 n.27.

undertake an expensive investigation involving employees and outside consultants. The plaintiff claims that the costs incurred as a result of that investigation constitute actual loss for purposes of the trade secrets act. We disagree.

The plaintiff cites no Connecticut authority for the proposition that costs incurred in the course of investigating potential wrongdoing by a former employee constitute actual damages, and we are not aware of any such authority. The plaintiff, instead, relies on *Dozor Agency, Inc.* v. *Rosenberg*, 218 A.2d 583 (Pa. 1966), for the proposition that a plaintiff is entitled to recover, as damages, out-of-pocket expenses necessarily spent to protect its business. In *Dozor Agency, Inc.*, the defendant, a former president and general manager for the plaintiff, took "not only the trade secrets he could carry in his head, but physically appropriated files containing confidential records and data including names, premium dates and amounts, as well as pertinent information concerning the active policyholders to whom [the plaintiff] had sold insurance." Id., 584. The defendant then proceeded to use that information to compete with the plaintiff. Id. Specifically, the defendant in *Dozor Agency, Inc.*, solicited the plaintiff's clients and convinced four of the plaintiff's subagents to leave the plaintiff's employ and to work for him, the defendant. Id., 584–85. The out-of-pocket expenses referred to by the court in *Dozor Agency, Inc.*, "included expenses for postage-printing, paper and special sales expenses incurred to reinstate the former policy holders and protect other policies; it included also the proportionate salary paid to certain employees while engaged in efforts to reinstate and protect policies carried by the plaintiff company." Id., 585.

The present case differs dramatically from *Dozor Agency, Inc.* In this case, the court found that the plaintiff had failed to furnish evidence to support an infer-

ence of utilization of a trade secret by Marquis. In *Dozor Agency, Inc.*, on the other hand, the court did find that the defendant had misappropriated *and used* trade secrets belonging to the plaintiff against the plaintiff in competition with him directly resulting in actual harm to the plaintiff. Incident to that actual harm were what the court in *Dozor Agency, Inc.*, referred to as "out-of-pocket expenses." Id. Those expenses, however, were incurred by the plaintiff while attempting to mitigate and reverse the harm *actually caused* by the defendant's conduct. In this case, the "out-of-pocket expenses" suffered by the plaintiff amount to nothing more than costs incurred in the course of investigating *whether* the plaintiff had suffered an injury as a result of Marquis' misconduct.

"It is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute." *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 715, 674 A.2d 845 (1996). Actual damage is a necessary element that must be proven by the plaintiff to prevail on its trade secrets claim. To allow the plaintiff to characterize the cost of its own investigation of suspected wrongdoing as actual damages would effectively eliminate the plaintiff's burden of proving actual harm resulting from Marquis' alleged violation of the trade secrets act. The court properly concluded that the plaintiff had failed to adduce evidence of actual loss as a result of Marquis' conduct.

B

We next address the plaintiff's trade secrets claim against Floorgraphics. The court found that "[t]he alleged trade secrets at issue in this case are the customized store lists, the presentations and the data contained in the retailer status report." Of those three alleged trade secrets, the court concluded that only the

store list constituted a trade secret under the trade secrets act. Finally, the court found that the plaintiff presented "no evidence . . . that Floorgraphics acquired or disclosed any trade secrets of News America and therefore, there has been no misappropriation of a trade secret by this defendant." The plaintiff does not dispute those findings of fact.

The plaintiff suggests, but does not specifically argue, that the retailer status report is a trade secret. That suggestion is premised on the court's finding that "[s]ome of the information in the [retailer status report] was information learned by Marquis while at News America and remembered by him at the time he created the report." The court went on to state that the information remembered and used by Marquis "had no competitive value to Floorgraphics" and that "Floorgraphics did not [make] any actual use of or derive any benefit from the information contained in the retailer status report." No other discussion is had.

"We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004). Consequently, we decline to review the court's finding that Floorgraphics did not misappropriate any trade secret from News America.

IV

CONVERSION, STATUTORY THEFT BY MARQUIS

The plaintiff claims that the court improperly concluded that Marquis committed neither statutory theft

under § 52-564 nor conversion. Specifically, the plaintiff claims that although the court made all of the necessary findings to conclude that Marquis had committed statutory theft and conversion, the court nevertheless improperly concluded that because Marquis destroyed the copies of documents he made, News America was restored to the status quo and thereby suffered no loss.

We begin our analysis by restating some basic principles of the law of conversion and the award of treble damages under § 52-564. The tort of "[c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." (Internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 169, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). In addition, conversion requires that the owner be harmed as a result of the unauthorized act. *Devitt* v. *Manulik*, 176 Conn. 657, 660, 410 A.2d 465 (1979). Similarly, "[s]tatutory theft under [General Statutes] § 52-564 is synonymous with larceny [as provided in] General Statutes § 53a-119. . . . Pursuant to § 53a-119, [a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or [withholds] such property from [the] owner." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 44, 761 A.2d 1268 (2000). "[S]tatutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Internal quotation marks omitted.) *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 520, 705 A.2d 215 (1998). An award of treble damages is an extraordinary statutory remedy. *Schaffer* v. *Lindy*, 8 Conn. App. 96, 104, 511 A.2d 1022 (1986).

To establish a prima facie case of conversion, the plaintiff had to demonstrate that (1) the material at issue belonged to the plaintiff, (2) that Marquis deprived the plaintiff of that material for an indefinite period of time, (3) that Marquis' conduct was unauthorized and (4) that Marquis' conduct harmed the plaintiff. See *Discover Leasing, Inc.* v. *Murphy*, 33 Conn. App. 303, 309, 635 A.2d 843 (1993).

The plaintiff argues that as a result of Marquis' actions, it was excluded from exercising its right of ownership, possession and control over the materials and suffered harm as a result thereof. The court expressly found that the plaintiff did not establish that it suffered any loss. The plaintiff mentions in its brief that it did suffer harm, namely, the cost of investigating Marquis' wrongdoing. The plaintiff's claim is that the court improperly concluded, as a matter of law, that Marquis was not liable for conversion. The plaintiff does not directly challenge the court's factual findings with respect to that claim of error. Second, for all of the reasons already stated, out-of-pocket expenses incurred in investigating whether an employee engaged in misconduct do not constitute actual loss for purposes of tort liability.

The court stated that when Marquis destroyed the copies he made, the purported conversion ceased. The plaintiff cites that statement by the court in support of its contention that the court improperly stated the law of conversion. In the context of the court's complete memorandum of decision, we interpret that statement differently. In stating that the conversion ceased at the time Marquis destroyed the materials he took from the plaintiff, the court merely pointed out that the possibility of Marquis' ever using those materials in competition with or in any manner that would harm the plaintiff ceased. Without a predicate for future harm and without a showing by the plaintiff that it suffered any harm

between the time Marquis took the materials and their destruction or to the time of trial, no predicate remained on which harm could be established. Reviewing the court's memorandum of decision and the facts found therein, we conclude that the court properly decided that the plaintiff had failed to establish that it suffered harm as a result of Marquis' misconduct and therefore failed to establish the prima facie case for its claim of conversion. Because liability for conversion is a precondition to a finding of liability for treble damages under § 52-564 and because the plaintiff failed to establish a prima facie case for its claim of conversion, we also conclude that the court properly determined that § 52-564 did not apply in this case.

V

COMPUTER RELATED OFFENSES

The plaintiff claims that the court improperly concluded that "without proof of injury or loss . . . News America is not a prevailing party within the meaning of § 52-570b (e) and, therefore, is not eligible for costs or reasonable attorney's fees." Specifically, the plaintiff argues that a showing of "actual" or "pecuniary" loss is not required in order to be considered a "prevailing party" for purposes of awarding attorney's fees under § 52-570b (e).

General Statutes § 52-570b (c) provides: "Independent of or in conjunction with an action under subsection (a) of this section, any person *who suffers any injury* to person, business or property may bring an action for damages against a person who is alleged to have violated any provision of section 53a-251. The aggrieved person shall recover actual damages and damages for unjust enrichment not taken into account in computing damages for actual loss, and treble damages where there has been a showing of wilful and malicious conduct." (Emphasis added.) General Stat-

utes § 52-570b (e) provides: "In any civil action brought under this section, the court shall award to any aggrieved person *who prevails*, reasonable costs and reasonable attorney's fees." (Emphasis added.)

Our Supreme Court has discussed the meaning of "prevailing party" in other contexts. In *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 303, 780 A.2d 916 (2001), the court held that "the plaintiff was the prevailing party of record because a judgment had been ordered in his favor." Id. Explaining its holding, the court stated that "it is difficult to see why one who has secured a judgment of the court in his favor should not be viewed as a party who has prevailed in the action in question, irrespective of the route by which he received that judgment. Indeed, prevailing party has been defined as [a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . . Moreover, the United States Supreme Court has determined, in construing the attorneys' fees provision of the Fair Housing Amendments Act; 42 U.S.C. § 3613 (c) (2); and the Americans with Disabilities Act; 42 U.S.C. § 12205; that the term prevailing party is a legal term of art . . . [referring to] one who has been awarded some relief by the court . . . . Other courts have held that, under various federal fee shifting statutes, the term prevailing party includes a plaintiff who has secured actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff . . . ." (Citations omitted; internal quotation marks omitted.) *Wallerstein* v. *Stew Leonard's Dairy*, supra, 303–304.

With those principles in mind, we turn now to the plaintiff's claim. The plaintiff claims, in purely conclusory fashion, that Marquis, without authorization, accessed and used the plaintiff's computer system. In order to state a valid claim under § 52-570b, however,

the plaintiff needed to show that it suffered injury. General Statutes § 52-570b (c). The court found that the record contained no evidence of injury, actual damages, unjust enrichment, actual loss or pecuniary loss suffered by the plaintiff. Concluding that the plaintiff had failed to meet its burden of showing injury or harm resulting from Marquis' misconduct, the court rendered judgment in favor of Marquis on that count of the plaintiff's complaint that alleged computer related offenses.

Notwithstanding the court's finding that the plaintiff sustained no demonstrable harm or injury and notwithstanding the fact that the court rendered judgment in favor of Marquis on the claim of computer related offenses, the plaintiff nevertheless maintains that it is the prevailing party for purposes of § 52-570b and, therefore, the court was required to award the plaintiff attorney's fees. In support of its position, the plaintiff cites *Lord* v. *Lord,* Superior Court, judicial district of Fairfield, Docket No. 380279 (May 14, 2003) (34 Conn. L. Rptr. 676), and *Blue Cross & Blue Shield of Connecticut, Inc.* v. *DiMartino,* Superior Court, judicial district of New Haven, Docket No. 300642 (July 2, 1991). This court finds the plaintiff's reliance on those cases misplaced.

*Lord* involved an action for, inter alia, the illegal recording of a telephone conversation in violation of General Statutes § 52-570d (c), which provides: "Any person aggrieved by a violation of subsection (a) of this section may bring a civil action in the Superior Court to recover damages, together with costs and a reasonable attorney's fee." Missing from § 52-570d, but present in § 52-570b (c), is the requirement that a person suffer injury. *Lord,* therefore, is inapposite to the present case.

In *DiMartino,* the court held that the defendant in that case had misappropriated trade secrets stored on the plaintiff's computer system in violation of the trade secrets act and common law. After a finding of liability

for a computer related offense, the *DiMartino* court addressed the plaintiff's request for punitive damages and attorney's fees. The court concluded that "[i]n addition to punitive damages, [the plaintiff] is entitled to recover reasonable attorney's fees and costs," citing General Statutes §§ 35-53 (b), 52-570b (e) and 42-110g (d). The court continued: "Indeed, under § 52-570b, governing actions for computer related offenses, the court shall award to any aggrieved person who prevails, reasonable costs and reasonable attorney's fees. . . . Even if the plaintiff has suffered no actual damages, it may recover attorney's fees and costs under [the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.]." *Blue Cross & Blue Shield of Connecticut, Inc.* v. *DiMartino*, supra, Superior Court, Docket No. 300642.

Unlike the court in the present case, the court in *DiMartino* concluded that the defendant had violated the trade secrets act. Only after finding liability under that act did the *DiMartino* court consider the defendant's liability for having committed computer related offenses. Because the court found that the defendant had used a computer in connection with her violation of the trade secrets act, § 52-570b (e) applied in that case. In the present case, the court properly concluded that both defendants did not violate the trade secrets act and that Marquis did not commit conversion and, therefore, no predicate ground existed for the court to consider liability for reasonable costs or attorney's fees under § 52-570b (e). We conclude, as the court did, that the plaintiff was not the prevailing party for purposes of § 52-570b (e).

VI

NOMINAL DAMAGES

The plaintiff argues that the court improperly denied the plaintiff an award of nominal damages in connection

with any or all of the previously discussed claims. Claiming that the court's conclusion on that issue is "logically incorrect considering the facts set out in the memorandum of decision and incorporates incorrect legal conclusions," the plaintiff seeks plenary review of its claim.

In this case, the court properly rendered judgment for the defendants as to each cause of action alleged by the plaintiff. Accordingly, no judgment for the plaintiff was legally permissible. Nominal damages cannot be awarded unless liability has first been established. *Riccio* v. *Abate,* 176 Conn. 415, 420, 407 A.2d 1005 (1979). Even if the plaintiff were entitled to nominal damages, a claim with which this court does not agree, that is all the plaintiff would be entitled to recover, and it would not be entitled to a new trial. "Our case law makes clear that when our disposition of a claim on appeal entitles a party to a trial in which only nominal damages may be awarded, we will not remand the case for a new trial." *Larsen Chelsey Realty Co.* v. *Larsen,* 232 Conn. 480, 504, 656 A.2d 1009 (1995); *Sessa* v. *Gigliotti,* 165 Conn. 620, 622, 345 A.2d 45 (1973). The court properly denied the plaintiff an award of nominal damages in connection with any or all of the plaintiff's alleged claims.

The judgment is affirmed.

In this opinion the other judges concurred.