## The Phœnix Mutual Life Insurance Company *vs.* Gideon E. Holloway and others.

The defendant *H* as principal and the other defendants as his sureties gave
the plaintiffs, a life insurance company, a bond for $5,000, conditioned
that *H*, who had been appointed general agent for the company to pro-
cure applications for insurance and collect premiums on policies issued
thereon, should make monthly payments to the company of all moneys
which he might receive for or owe them and should faithfully discharge
his duties as such agent. *H* entered upon the agency and for six years
made monthly reports and settlements, until, upon making his report
for a certain month, he was unable to pay the amount called for by the
report. The plaintiffs insisted on payment, and on his neglect to pay,

Phœnix Mut. Life Ins. Co. *v.* Holloway.

discharged him from his agency. In a suit brought by them on the bond it was held—

1. That *H* had no such vested interest in the premiums thereafter to be collected on policies issued through his agency as could not be affected by his justifiable removal from office.

2. That a provision in his contract with the plaintiffs that he might dispose of his agency to a person acceptable to the plaintiffs and subject to the same duties and privileges, and that if he should die while in office the plaintiffs would make some arrangement whereby his heirs might have the equitable value of the agency, did not secure his right to the future premiums as against all other modes of terminating his agency.

3. That the plaintiffs had a right to remove him from his agency on account of his defalcation, and that such a removal terminated his interest in such premiums.

4. That *H* was liable for that portion of the deficit which was caused by the failure of his sub-agents to pay over to him moneys that they had received.

5. That the sureties were also liable for such moneys in the hands of his sub-agents, the business secured by the bond being that of a general insurance agent, which ordinarily involves sub-agencies.

Where there has been no misrepresentation or concealment on the part of the obligee in such a bond as to any fact that it was important to the sureties to know, it is no defense that they were ignorant of the extent of the obligation assumed. It was their duty to inquire before assuming the obligation.

The mere failure of the obligee in such a bond to notify the sureties of the default of the principal will not discharge them.

The plaintiffs, at the time the bond was given, held *H's* note for $25,000. Several months after, without the knowledge of the sureties, they took from him a mortgage to secure this note and gave him an agreement that they would not enforce the mortgage, but would collect it out of the insurance business in his hands, on which they were to have a lien. Held not to discharge the sureties.

[Argued October 2d, 1883—decided February 29th, 1884.]

ACTION on a bond given by the defendants for the faithful discharge by the defendant Holloway of his duties as general agent of the plaintiffs; brought to the Superior Court in Hartford County. Facts found by a committee and case reserved for advice. The case is sufficiently stated in the opinion.

*A. P. Hyde* and *F. Hyde*, for the plaintiffs.

*A. Brandegee*, with whom was *P. H. Hutchinson*, for the defendants.

LOOMIS, J.　The bond in suit, which is for $5,000, dated April 25th, 1872, was given to the plaintiffs by Holloway as principal and the other defendants as sureties, conditioned that Holloway (having been appointed general agent of the plaintiffs for the purpose of procuring applications for life insurance and collecting premiums thereon,) should, " on the first day of each month, pay or hand over all moneys belonging to said company which might at any time be received by him, as also all moneys which he then owed or might thereafter owe the company, and should faithfully discharge his duties as such agent." Holloway commenced the business of his agency on the first of May, 1872, and made monthly reports of all moneys received by him or his sub-agents, and settled for the same regularly till January, 1878, when he made his report for the month preceding, and then informed the plaintiffs that he would not be able to pay in full the amount called for by that report. The plaintiffs insisted upon his paying all that he owed, and upon ascertaining that there was a deficit in his accounts for the months of December and January of over eighteen thousand dollars, which he refused to pay, removed and discharged him from his agency for that cause.

That there was a clear breach of the condition of the bond is too obvious from the finding to require the least discussion. The only debatable question in this connection is as to the extent of the breach or amount of deficit, which we will consider hereafter.

The principal contention centres in the question whether Holloway, under his contract with the plaintiffs, had such an interest in the premiums that should be thereafter collected on policies issued within the territorial jurisdiction of his agency, as would remain unaffected by his default and removal from office. Such is his claim ; and if well founded, and he can recoup the damages or set off the amount in this action, no recovery can be had in favor of the plaintiffs, for it is found that the amount of Holloway's commissions on such policies would exceed the amount of his indebtedness to the plaintiffs.

Waiving any discussion of the question whether any set-off can be allowed in a suit brought, as this was, before the commissions became due, we proceed to consider whether Holloway has any right at all to the commissions in question. While he remained agent he had a right to collect the premiums, and of course a right to his commissions, and if the plaintiffs had wrongfully deprived him of his agency, it would lay the foundation for a recoupment of the damages resulting from such wrongful act. It becomes therefore important at the outset to inquire whether, under the circumstances disclosed by the finding, his removal from office was justifiable? Manifestly it was; and not only so, but a positive duty, which, had the directors of the company neglected, would practically have made them guilty participants in any future defalcation by the same agent. Such conduct on their part would wrong both the stockholders of the corporation and the sureties of the agent, and would shock the sentiment of common honesty. But what are the consequences of such a removal from office? Nothing, say the defendants, except the mere right to obtain new insurance and issue new policies; as to all existing business and all renewals of existing policies, the agent takes the benefits of a continuance in office without any of its obligations, responsibility or labor. Such a doctrine we believe has no support in good reason or good law.

The defendants contend that Holloway's interest in the future premiums that might be collected on existing policies or renewals thereof, was a vested property interest, which could not be divested or confiscated by any act of the plaintiffs.

It may well be conceded that the act of the company alone could not work such a result, but coupled with the defendant's own act it may have that effect. Whatever right Holloway had was under his contract, but when that ceased to operate through his own misconduct there was no longer any foundation for his future right to rest upon. We do not mean to say that the right to the commissions must always depend on the right to collect the premiums.

It is possible that the two things should have an independent existence, as where an agent is removed without fault on his part or for only a slight fault; but, where he is guilty of such misconduct as this case discloses, he deprives himself of the right to set up his broken contract as a continuing one for his own benefit.

If gross misconduct on the part of a hired servant may forfeit the right to recover for previous faithful service, as Lord TENTERDEN said it might in *Atkins* v. *Acton*, 4 Car. & Payne, 208, with stronger reason, as would seem, it might forfeit rights that relate wholly to the future, as in this case. The doctrine is now too well settled to be longer called in question, that in contracts of hiring there is an implied condition that the servant will perform the duties incident to his employment honestly, and will do nothing injurious to his employer's interest, and that if he proves radically unfaithful to his trust or is guilty of gross misconduct he forfeits all right to compensation. *Bixby* v. *Parsons*, 49 Conn., 483; *Champion* v. *Hartshorne*, 9 id., 564; *Calls* v. *Brouncher*, 4 Car. & Payne, 518; Wood on Master and Servant, 166.

The same principle has been recognized as applicable to agents of insurance companies. *Myers* v. *Knickerbocker Life Ins. Co.*, 2 Bigelow's Life and Accident Ins. Reports, 149; *Ensworth* v. *N. York Life Ins. Co.*, 7 Am. Law Register, N. S., 332.

The argument so far has proceeded upon the assumption that, but for the misconduct of Holloway, he would have had a right to commissions on premiums paid after the termination of his agency. The right, however, if it exists at all, must be found in the contract between the parties. *Spaulding* v. *N. York Life Ins. Co.*, 61 Maine, 329; *Partridge* v. *Phœnix Life Ins. Co.*, 15 Wallace, 573.

The contract in the case at bar only provided for the termination of the agency in one of two ways:—1st. The agency might be sold by the defendant with the aid of the plaintiffs to a person acceptable to the latter, and subject to the same duties and privileges. 2d. If the defendant should

die while in office the plaintiffs would make some arrangement whereby his heirs might have the equitable value of the agency. · There might be some ground for claiming that all Holloway's rights as to the future (including commissions on future premiums,) must be considered as merged in and limited by these special provisions. But the termination of the agency here contemplated was one for which the agent was not in fault. What has actually occurred was not provided for, but as the provisions referred to, and the act of the plaintiffs in taking a lien on the agency, recognize a value in it beyond the time of Holloway's actual occupation of the office, we think it should be implied that the company would not wantonly deprive him of the agency without recompense. We think, therefore, he had a right to continue his agency so long as he faithfully performed its duties, and that a removal without cause would have entitled him to recoup damages against the plaintiffs to the amount of the equitable value of his agency at the time he was so removed. But his defalcation and consequent removal carried with it, not only the loss of commissions on renewals of existing policies, but the loss of his agency also for all purposes, whether for selling to another or for transmitting it to his heirs.

Our conclusion therefore is, that the amount found due by the committee cannot be reduced by any claim which Holloway makes by way of set-off or recoupment.

But it is further claimed that the defendants are not liable for that portion of the deficit represented by the amount still in the hands of Holloway's sub-agents.

It is found that the entire amount due on account of premiums received by him or his sub-agents was $18,060.31, after deducting all commissions which Holloway would have been entitled to had he paid over the full amount to the plaintiffs. But in the above amount it is found that there was included $6,325.49, arising from a defalcation by one Murphy, who was appointed by Holloway a sub-agent located at Providence, R. I.

For the purposes of this case it is immaterial whether the

amount of Murphy's defalcation be included or not, for, if it should be deducted, the amount remaining will be $11,734.82, which far exceeds the greatest sum that can be recovered in this suit, as the damages cannot exceed the penalty named in the bond, which is five thousand dollars.

But it is said that there were other sub-agents who had never paid the full amount of their collections to Holloway, but it will be seen that they stand on very different ground. The finding on this subject is as follows:—" No other portion of said $18,060.31 arose from any defalcations of any sub-agents of said Holloway which were in evidence, except that the defendant Holloway claimed that he had on various occasions accounted for and paid to the plaintiff company premiums which had been received by his sub-agents, and which he had never received from them, and which he now claims he ought to be credited with in reduction or extinguishment of the amount which now appears to be due to said company in said bill of particulars. But I find that all such payments were made by said Holloway for defalcations of his sub-agents with the understanding between him and the company that he was responsible for all such defalcations." It will be noticed that no names, sums or circumstances are given, and no reasons are disclosed why Holloway failed to collect, and it is not even found that the facts were as represented; all we know is that such a claim was made before the committee, and, whether true or not in fact, it was conceded that Holloway had voluntarily paid over the entire amount to the plaintiffs in his regular settlements with them, admitting his responsibility for his sub-agents; which settlements understandingly made we are asked to set aside without proof of any facts to warrant it.

But were the amounts in the hands of sub-agents material, the facts stated in the finding make it clear that they must be considered as Holloway's agents, so that all the moneys so received by them were in legal effect received by him.

But in behalf of the sureties it is said that they signed the bond on account of their personal confidence in Holloway whom they knew, and that it is to be presumed that

they would not have knowingly guaranteed the honesty and fidelity of sub-agents whom they did not know. The condition of the bond, however, signed by them, gave them notice that the business for which they were to become responsible was the insurance business of a general agent, and not that of a special and limited agency. They could hardly fail to understand that the business would naturally, if not necessarily, involve the employment by Holloway of sub-agents. We think therefore collections made by them for him may fairly be considered within the import and true meaning of the bond. *Hayden* v. *Hill*, 52 Verm., 259.

In behalf of Loomis, one of the sureties, the further claim is made that he is discharged from liability on the bond by certain acts on the part of the plaintiffs:—1st. Because, without his knowledge, they, in January, 1873, took a mortgage from Holloway to secure a note of twenty-five thousand dollars, which they held against him at the time the bond was given, and by an agreement with him made at the same time with the mortgage, promised not to enforce it under any circumstances, but to collect it wholly out of the business of the agency, upon which Holloway gave them a lien. 2d. Because the plaintiffs in January, 1878, had knowledge of Holloway's deficit, but did not notify Loomis till the last day of the same month, and then failed to state the amount or make any specific claim on him as surety.

Now when the sureties signed the bond it is not pretended that there was the least misrepresentation made by the plaintiffs as to Holloway's liability or concerning any fact it was important for the sureties to know, nor is it claimed that after the plaintiffs learned that Holloway could not meet his engagements with them, they withheld any information which in any way affected the right or opportunity of the sureties to secure or protect themselves. A brief refer ence to the authorities we think will make it perfectly clear that neither of the objections relied upon can avail to discharge the sureties.

In *Western N. York Life Ins. Co.* v. *Clinton et al.*, 66 N. York, 326, it was held that "it is no defense to an action

against sureties on a bond given by an agent for the faithful performance of his duties, that the sureties were ignorant as to the extent of the obligation assumed, or were misled by the principal in reference thereto, in the absence of proof that the obligee was a party to the fraud; it is not the duty of the obligee to seek out the sureties and explain to them the nature and extent of their obligation, but it is for the sureties to ascertain for themselves." *Howe Machine Co.* v. *Farrington*, 82 N. York, 121.

In Thompson's Liability of Officers and Agents of Corporations, p. 526, § 17, the doctrine of several well considered cases is correctly summarized as follows: "The mere failure of the obligee promptly to notify the surety of the default of the principal in an official bond, will not discharge the surety. Forbearance or mere passiveness of the obligee in this respect for any length of time, independent of concealment or fraud, will not relieve the surety of his liability." Citing *Pittsburgh, &c., R. R. Co.* v. *Shaeffer*, 59 Penn. St., 350, where the sureties were not notified for three months after default of the principal, and *Peel* v. *Tatlock*, 1 Bos. & Pul., 419, where there was a delay of notice for three years, and other cases equally in point.

In *Grocer's Bank* v. *Kingman*, 16 Gray, 473, it was held that the sureties on a cashier's bond are not entitled to notice of his resignation or of his default, nor need any demand be made upon them before an action is brought on the bond.

We advise the Superior Court to render judgment in favor of the plaintiffs against all the defendants for the sum of five thousand dollars, with interest from the date of Holloway's defalcation.

In this opinion the other judges concurred.