# David J. Breen v. Larson College

Brown, C. J., Jennings, Baldwin, Inglis and O'Sullivan, Js.

Argued June 7—decided July 25, 1950

*Norman Zolot*, with whom, on the brief, was *Clarence A. Hadden*, for the appellant (plaintiff).

*John H. Weir*, with whom, on the brief, was *Curtiss K. Thompson*, for the appellee (defendant).

BROWN, C. J. The plaintiff brought this action against the defendant for breach of a contract by the terms of which he was to serve as its academic dean until June 30, 1948, at a salary of $5500 per year. He alleged that he was wrongfully discharged by the defendant on February 25, 1948, and has been paid no compensation since. By its answer the defendant denied the material allegations of the complaint and referred to a breach by the plaintiff. The court rendered judgment for the defendant and the plaintiff has appealed. The plaintiff rests his appeal upon two grounds: first, that the court erred in allowing the defendant under its denial to introduce evidence of a claimed breach of the contract by the plaintiff; second, that the court erred in concluding that there was a breach of the contract by the plaintiff which justified the defendant in discharging him as it did.

We summarize the material facts in the court's finding, which is not subject to correction except as to certain conclusions of law which are stated as facts. The defendant is a nonprofit corporation of which George V. Larson is president and his wife vice president. The plaintiff, who had had experience in educational work, became academic dean of the defendant on September 1, 1947, pursuant to a contract whereby the defendant was to pay him a salary of $5500 for the ensuing year. His duties in so far as directly related to the girls constituting the student body were limited to conferring on their courses of study and academic matters and

teaching two courses. His position was one of trust and responsibility.

On Sunday evening, December 7, 1947, two of the students, while crossing the street, were hit by an automobile and sustained minor injuries. In a talk which Larson had with them the next afternoon, he stated that he would try to ascertain the identity of the driver and witnesses, but, shortly after, the two girls and the driver called at his office. The girls indicated that they did not consider the driver to blame, and he wanted them to sign a paper exonerating him from liability. Larson would not permit them to do so. The company carrying group accident insurance on the students was promptly notified and its representative, by arrangement with Larson, interviewed the two girls. On Thursday of that week, the plaintiff, who had heard rumors concerning the incident and disapproved of the course adopted by Larson, decided that the situation required his intervention and took it upon himself to call the police to the college to investigate. He did not talk with Larson about the accident until after the police had responded to this call. The plaintiff at no time reported his view of Larson's conduct to the defendant's trustees, one of whom was at the college daily.

Although, as the plaintiff knew, it was the established practice and office routine of the defendant to keep and file copies of outgoing mail, he carried on correspondence with the mother of each of the injured girls and failed to place either their letters or copies of his answers thereto in the defendant's file. On February 16, the plaintiff wrote Mrs. Henderson, mother of one of the girls, a letter in longhand on the letterhead of the college in which, without basis in fact, he stated: "Larsons will be against you in any suit, so your lawyer should be warned about them. He has admissions from both girls that they were to blame and he may

try to help the driver in the hope of getting a 'handout' from him." He made a similar defamatory statement to the other girl's mother. He also included in the letter to Mrs. Henderson these further defamatory charges concerning the defendant, its president and its vice president: "I accepted this position in good faith only to find that I was supposed to be merely an educational front, behind which the Larsons would continue to 'operate' as usual. Do not mistrust your daughter, she only knows one thousandth-part of the story." For lack of postage the letter was not delivered but was returned to the defendant's office. It was not written in the best interests of the defendant but was calculated to and was wilfully written with intent to injure it. The plaintiff failed to perform the duties of his employment in accordance with his obligation, he did not serve the defendant faithfully and honestly, and his conduct was injurious to its best interests. On February 25, 1948, the defendant notified him that the contract was no longer in effect.

The plaintiff claims that the court erred in admitting in evidence his letter of February 16 containing the words quoted above. His contention is that, since the defendant's answer included no affirmative allegation that the plaintiff had breached the contract, no evidence of such breach was admissible. The complaint alleged the contract, that "the plaintiff entered upon the services of the defendant" in accordance with its terms "and still is ready and willing to continue in such service," but that on "February 25, 1948, the defendant wrongfully discharged the plaintiff and refused to permit him" to continue to serve and has paid him nothing since. The answer admitted that on February 25 "the defendant notified the plaintiff that in view of his breach of the contract of employment, the defendant no longer considered the same as being in effect"

and that after that date it had paid him nothing. Except as so admitted the allegations of the complaint were denied. On direct examination the plaintiff testified that he had carried out his duties as dean of the college and was ready, willing and able to continue to do so. In response to this testimony the defendant, without objection, developed on cross-examination of the plaintiff that he had failed to carry out his duties as dean. The plaintiff's sole objection was to the admission of the letter. It was properly admissible to controvert the plaintiff's direct testimony of his performance under the contract, and the court's ruling was correct.

While this sufficiently disposes of the error assigned, we deal briefly with the plaintiff's broader claim, which goes beyond the assignment made, that, in the absence of an affirmative plea of justification for discharging him, not only should the evidence have been excluded but the pleadings are insufficient to support the judgment. Since it does not appear in the record that the latter claim was raised in the trial court, it must be regarded as having been waived. *Mainolfi* v. *Brazee*, 135 Conn. 435, 437, 65 A. 2d 261. As to the former, while the defendant's answer did not in fact allege justification, it did, by the words quoted above, at least suggest this as a defense. In the absence of a motion for a more specific statement, the pleading, when considered in connection with the denial of the plaintiff's allegation that the discharge was wrongful, was sufficient to raise the defense of justification. Since the pleadings presented the issue whether the plaintiff had properly performed, the defendant was not "restricted to a mere verbal denial, but might make that denial effectual and conclusive by proving such a state of facts as would show either that the affirmative could not be true or that the negative must be true." *Roma*

v. *Climax Co.,* 88 Conn. 642, 649, 92 A. 427.

It has long been the law of this state "that in contracts of hiring there is an implied condition that the servant will perform the duties incident to his employment honestly, and will do nothing injurious to his employer's interest, and if he proves radically unfaithful to his trust or is guilty of gross misconduct he forfeits all right to compensation." *Phoenix Mutual Life Ins. Co.* v. *Holloway,* 51 Conn. 310, 314. As related to the plaintiff's principal delicts in this case, this more explicit statement of the rule is applicable: "The nature of the relation imports trust and confidence, and its evident purpose is the advancement of the master's interests, and if the trust is violated, and the employee intentionally does anything detrimental to the employer's interests, it is such a breach of the contract as justifies his immediate discharge." *In re Nagel,* 278 F. 105, 109. It is not essential that the employer show, to justify an employee's dismissal, that his misconduct has caused the employer to suffer loss, and an employee's conduct toward other employees which has a tendency to interfere with the employer's business may afford reason for dismissal. *Bernstein* v. *Lipper Mfg. Co.,* 307 Pa. 36, 40, 160 A. 770. In view of the responsible position of trust which the plaintiff occupied, with the duty of good faith and loyalty to the defendant's interests which it imposed, it is obvious that his acts in violation of this duty, as found by the court, afforded sufficient basis within the principles quoted above to justify its conclusion that he had breached the contract and that the defendant was entitled to dismiss him as it did.

There is no error.

In this opinion the other judges concurred.