******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WALL SYSTEMS, INC. *v.* WILLIAM POMPA ET AL.
(SC 19734)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued December 13, 2016—officially released March 7, 2017*

*Benjamin M. Wattenmaker*, with whom, on the brief, was *John M. Wolfson*, for the appellant-appellee (plaintiff).

*Gerald A. Del Piano*, with whom was *P. Jo Anne Burgh*, for the appellees-appellants (named defendant et al.).

*Opinion*

ROGERS, C. J. The primary issue raised by this appeal and cross appeal is the range of monetary remedies available to an employer once it has proven that its employee breached his common-law duty of loyalty. The plaintiff, Wall Systems, Inc., appeals from the judgment of the trial court awarding it damages of $43,200, plus statutory interest and attorney's fees, after concluding that the defendant, William Pompa, had breached his duty of loyalty by working simultaneously for the plaintiff and for a competitor, and further, by accepting three kickbacks from a subcontractor in connection with his work for the plaintiff. The court, as part of its remedy, imposed a constructive trust on a bank account held jointly by the defendant and his wife, Jill Pompa.[1]

On appeal, the plaintiff claims that the trial court, in fashioning a remedy for the defendant's breach of loyalty, improperly declined to order that the defendant forfeit all of the compensation he had received during the period in question, both from the plaintiff and from its competitor. The defendant responds that the court's ruling in this regard was a proper exercise of its discretion, but he claims in the cross appeal that the damages award, in other respects, lacked evidentiary support. Jill Pompa contends that the court's imposition of a constructive trust on the joint bank account was unjustified because there was no proof that she had participated in any of the defendant's wrongdoing or that the monies gained from that wrongdoing had been deposited in the account. We conclude that the trial court's award of damages had sufficient evidentiary support and that the court's refusal to order additional monetary relief was an appropriate exercise of its discretion, but that the court's imposition of a constructive trust on the joint bank account was not warranted on the evidence presented. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The following facts, which either were found by the trial court or are not disputed, are relevant to the appeal. The plaintiff is a building contractor comprised of various divisions. The defendant began working for the plaintiff in or around 1995, when the company was under different management, and ultimately became the head of its exterior insulation finish systems division.[2] As division head, the defendant's duties included finding the plaintiff jobs with general contractors, estimating and bidding jobs, hiring and negotiating with subcontractors, obtaining materials, overseeing work, ensuring proper billing, and arranging payment for subcontractors. The defendant was considered part of the plaintiff's management team. He was well compensated by the plaintiff, receiving a base salary plus annual bonuses. From 2005 to 2010, the defendant received a total of approximately $894,000 in compensation from

the plaintiff.

Among the subcontractors working regularly for the plaintiff, who were hired and supervised by the defendant, were MK Stucco, LLC (MK Stucco), and B-Jan Stucco, LLC (B-Jan). MK Stucco was owned by Michael Kowalczyk, and B-Jan was co-owned by Michael Bochenek and his father.

In 2005, Richard Valerio, who previously had worked for the plaintiff as an employee and a subcontractor, became the plaintiff's owner. In the years that followed, the defendant received less compensation than that to which he believed he was entitled, leading to a breakdown in the employer-employee relationship.

Because he was dissatisfied with his reduced income from the plaintiff, the defendant began to work for MK Stucco as an independent contractor, doing estimating work for jobs that MK Stucco then would bid on. From 2005 to 2010, the defendant received a total of approximately $89,782 in compensation from MK Stucco for this work.[3] The defendant never informed Valerio that he was working for MK Stucco, nor did he ask permission to do so. Some of the jobs that the defendant estimated for MK Stucco were jobs on which the plaintiff also submitted bids.[4]

In the spring of 2010, Valerio became suspicious, believing that the defendant was working against company interests. Around that time, Bochenek informed Valerio that the defendant was demanding kickbacks from the plaintiff's subcontractors, in essence, increasing the cost of their jobs by adding extra work to their contracts, then demanding that one half of the additional amount paid by the plaintiff be returned, in cash, to the defendant personally. The plaintiff terminated the defendant's employment in October, 2010, and filed this action against him at that time. At some point thereafter, Valerio learned that the defendant also had been working for MK Stucco.

In a revised complaint dated July 11, 2011, the plaintiff alleged that the defendant had breached the duty of loyalty that he owed by virtue of his employment by, inter alia, charging kickbacks to subcontractors and performing work on his own behalf, rather than the plaintiff's, during the plaintiff's work day. He further claimed that the defendant's actions constituted conversion, statutory theft and fraud. The plaintiff claimed that the defendant's malfeasance had caused it damages of more than $500,000 and that, in light of the statutory theft allegations, it was entitled to treble damages.[5] As to both the defendant and Jill Pompa, the plaintiff alleged unjust enrichment and requested that the trial court impose a constructive trust over both of their assets, contending that those assets included moneys belonging to the plaintiff that the defendant wrongfully had obtained.[6] The defendant filed a cross complaint and

counterclaims against the plaintiff and Valerio alleging, in essence, that the plaintiff had not paid him all of the compensation to which he was entitled.

After a bench trial, the trial court held that the defendant had violated his duty of loyalty to the plaintiff by working for MK Stucco, a competitor of the plaintiff, and by receiving compensation for that work. It found that, although the plaintiff had performed only estimating duties for MK Stucco, and not bidding work, some of the jobs at issue had been bid on by both MK Stucco and the plaintiff. See footnote 4 of this opinion. In the court's view, the defendant's actions in this regard were deliberate, wrongful and intentional. The court further concluded, however, that the plaintiff had failed to prove that it had suffered any financial harm as a result of those actions. Specifically, there was no evidence that the plaintiff had lost any bids to MK Stucco due to the defendant's work for both companies, or that the defendant had worked for MK Stucco during the plaintiff's work day rather than on evenings or weekends, as he had testified without contradiction. Moreover, the plaintiff had not produced any evidence to show how much it would have earned on the jobs it purportedly had lost wrongfully, even assuming that the lost jobs were attributable to the defendant's actions or inactions.

The trial court held additionally that the defendant had breached his duty of loyalty to the plaintiff by engaging in a kickback scheme with B-Jan, but not with any other subcontractors.[7] It relied particularly on testimony from Bochenek as to three jobs on which B-Jan was working as a subcontractor and, according to Bochenek, the defendant had effected an increase to the contract price and, thereafter, required B-Jan to return one half of the price increase, in cash, to the defendant personally. Because the amount of the contract increases for those jobs were, respectively, $7000, $1400 and $6000, the court concluded that the total proven damages to the plaintiff, as a result of the kickback scheme, were $14,400, i.e., the aggregate of the individual increases. The court further concluded that the defendant's actions vis-à-vis B-Jan constituted conversion, statutory theft, fraud and unjust enrichment and, on the basis of the statutory theft, tripled the damages found to result in an award to the plaintiff in the amount of $43,200. Finally, the court imposed a constructive trust against both the defendant and Jill Pompa, reasoning that "[t]he latter, by having a joint bank account with [the defendant], was in receipt and holds some of the [moneys] which were taken illegally by [the defendant]." As to the defendant's counterclaim for unpaid bonuses, the trial court rejected it as unsupported by the evidence.

Regarding the plaintiff's contention, advanced in its trial brief, that the defendant should be required to

forfeit all of the compensation he had earned from both the plaintiff and from MK Stucco during the period of his disloyalty, the trial court, in a footnote in its memorandum of decision, stated only that it was "not persuaded." In response to the plaintiff's motions for articulation/clarification and reconsideration, the court, after hearing argument, reiterated that there was no evidence that the plaintiff had been harmed due to the defendant's working for MK Stucco, and it observed that the plaintiff also had failed to prove its allegations as to the defendant requiring kickbacks from any subcontractor other than B-Jan. The court cited the amount of damages it had found flowing from the B-Jan kickbacks and noted that, even trebled, that amount was insignificant in comparison to the amount of compensation that the plaintiff believed the defendant should have to forfeit. The court elaborated that the plaintiff had worked for MK Stucco on his own time, and there was no evidence that that work had interfered with his work for the plaintiff. In making its ruling, the court expressly stated that it "has the discretion as to what damages go to the plaintiff . . . ." After an additional hearing was held for the determination of attorney's fees,[8] a final judgment was rendered. This appeal and cross appeal followed. Both the plaintiff and the defendant challenge the propriety of the trial court's monetary remedy, while Jill Pompa contends that the imposition of a constructive trust was unwarranted. We will address these claims in turn.

I

The plaintiff claims that the trial court, as a matter of law, improperly declined to order the defendant to forfeit everything he had earned between 2005 and 2010, because certain authority provides that a disloyal employee is not entitled to the compensation he was paid during a period of disloyalty. According to the plaintiff, when an employee, such as the defendant here, is radically unfaithful, or wilfully breaches his duty of loyalty, his employer is entitled to recover the employee's entire salary, and that such is the case even when there is no proof of specific damages to the employer. In the plaintiff's view, given the facts found, and the trial court's legal conclusions that the defendant committed fraud, conversion and statutory theft, the court was required to order the remedy of forfeiture. The plaintiff claims additionally that the defendant, due to his breach of loyalty, also should be required to disgorge the compensation that he had received from MK Stucco, regardless of whether he had worked for MK Stucco on his own, or the plaintiff's, time. In support of its contentions, the plaintiff relies on substantial extrajurisdictional jurisprudence and various provisions of the Restatement of Agency, and it claims that the court, when fashioning its remedy, failed to acknowledge and apply those authorities although the plaintiff had discussed them in its trial memoranda.

The defendant responds that the amount of damages to be awarded for an employee's breach of his duty of loyalty is a matter within a trial court's discretion. He further contends that, given all of the circumstances, the trial court in the present case properly exercised its discretion in declining to order him to forfeit all of the compensation that he had earned from the plaintiff, and to disgorge that which he had received from MK Stucco, during his period of disloyalty. In the defendant's view, such a remedy would have been inequitable and harsh, particularly in light of the plaintiff's failure to prove that it had suffered any harm as a result of his working for MK Stucco. In response, the plaintiff points out that the court did find that it had suffered a financial loss in connection with the kickback scheme and that, in any event, proof of such a loss is unnecessary particularly because the defendant's breach was wilful and intentional.

We agree with the plaintiff that the remedies of forfeiture of compensation paid by an employer, and disgorgement of amounts received from third parties, are available when an employer proves that its employee has breached his or her duty of loyalty, regardless of whether the employer has proven damages as a result of that breach. Nevertheless, the remedies are not mandatory upon the finding of a breach of the duty of loyalty, intentional or otherwise, but rather, are discretionary ones whose imposition is dependent upon the equities of the case at hand. Moreover, while certain factors, including harm to the employer, should not preclude a finding that the employee has committed a breach of the duty of loyalty, they nevertheless may be considered in the fashioning of a remedy. Here, because the trial court properly exercised its broad discretion when it awarded damages but declined to order forfeiture or disgorgement, we will not disturb its judgment on this basis.

We begin with the applicable standard of review. As a general matter, "[t]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 483, 871 A.2d 981 (2005). Our review of the amounts of monetary awards rendered pursuant to various equitable doctrines is similarly deferential. *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 588, 57 A.3d 730 (2012). The plaintiff claims, however, that in light of the authority it identified and the trial court's other findings and conclusions, the court's decision not to order forfeiture of the defendant's compensation, or disgorgement of the pay he received from MK Stucco, was improper as a matter of law. When a trial court's legal conclusions are challenged, "our review is plenary and we must decide whether [those] conclusions are

legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *David M. Somers & Associates, P.C.* v. *Busch*, 283 Conn. 396, 407, 927 A.2d 832 (2007); see also *Walpole Woodworkers, Inc.* v. *Manning*, supra, 307 Conn. 588 (applicability of equitable doctrine in particular case is question of law); *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 725, 941 A.2d 309 (2008) (applying plenary review to employees' claim that they were entitled, as matter of law, to double damages and attorney's fees that generally were discretionary under applicable statute).

This court previously has recognized the viability of a claim by an employer against its employee for a breach of the duty of loyalty, which is grounded in agency principles.[9] See *Town & Country House & Homes Service, Inc.* v. *Evans*, 150 Conn. 314, 317–18, 189 A.2d 390 (1963) (employee breached duty of loyalty by soliciting employer's customers for his own competing business while still working for employer); *Breen* v. *Larson College*, 137 Conn. 152, 153–55, 157, 75 A.2d 39 (1950) (academic dean breached duty of loyalty to college by secretly undermining administration's position as to potential legal claim, defaming college in process); *Phoenix Mutual Life Ins. Co.* v. *Holloway*, 51 Conn. 310, 314–15 (1884) (insurance agent breached duty of loyalty to insurer by failing to remit premium payments as previously agreed).

"The relationship of principal and agent implies trust or confidence by the principal in the agent, and the agent is obligated to exercise the utmost good faith, loyalty and honesty toward his principal or employer. . . . The general principle for the agent's duty of loyalty according to the Restatement is that the agent must act solely for the benefit of the principal in matters connected with the agency." (Citation omitted.) *News America Marketing In-Store, Inc.* v. *Marquis*, 86 Conn. App. 527, 535, 862 A.2d 837 (2004), aff'd, 276 Conn. 310, 885 A.2d 758 (2005); see also 2 Restatement (Third), Agency § 8.01, comment (b), p. 250 (2006) ("the general fiduciary principle requires that the agent subordinate the agent's interests to those of the principal and place the principal's interests first as to matters connected with the agency relationship").

An employee's "duty of loyalty includes . . . the duty not to compete . . . and the duty not to disclose confidential information." (Internal quotation marks omitted.) *News America Marketing In-Store, Inc.* v. *Marquis*, supra, 86 Conn. App. 535; see also 2 Restatement (Third), supra, § 8.04, p. 301; id., § 8.05, p. 314. An employee's duty to refrain from competition with his employer during the employment relationship "encompasses competitive action taken directly by the [employee] with the [employer], actions taken by the [employee] on behalf of third-party competitors of the

[employer], and other assistance furnished by the [employee] to the [employer's] competitors." 2 Restatement (Third), supra, § 8.04, comment (a), p. 301. This is the case even when the employee does not use the employer's property or confidential information when competing with the employer. Id., comment (b), p. 301.

The duty of loyalty also includes the duty to refrain from acquiring material benefits from third parties in connection with transactions undertaken on the employer's behalf. 2 Restatement (Third), supra, § 8.02, p. 280. This rule bars the collection of secret commissions and kickbacks, "which might cause the employee to act at the expense or detriment of his or her employer." *In re Tri-Star Technologies Co.*, 257 B.R. 629, 635–36 (Bankr. D. Mass. 2001).

If an employer can prove an employee's breach of his or her duty of loyalty, there are a variety of remedies potentially available.[10] An employer, like the plaintiff here, may invoke the court's equitable authority when seeking monetary relief, particularly when it has difficulty proving damages. "The law of restitution and unjust enrichment . . . creates a basis for an [employee's] liability to [an employer] when the [employee] breaches a fiduciary duty," even when no loss to the employer is shown. 2 Restatement (Third), supra, § 8.01 comment (d) (1), p. 258. More specifically, if an employee realizes a material benefit from a third party in connection with his breach of the duty of loyalty, the employee "is subject to liability to deliver the benefit, its proceeds, or its value to the [employer]." Id.; see also id., § 8.02, comment (e), p. 285. Accordingly, "[a]n employee who breaches the fiduciary duty of loyalty may be required to disgorge any profit or benefit he received as a result of his disloyal activities," regardless of whether the employer has suffered a corresponding loss. *Efird* v. *Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 220 (Tenn. App. 2003); see also *NCMIC Finance Corp.* v. *Artino*, 638 F. Supp. 2d 1042, 1084–85 (S.D. Iowa 2009) (requiring disloyal employee to disgorge commissions he earned from third party for diversion of employer's business prospects).

Additionally, "an employer may seek forfeiture of its employee's compensation." *Cameco, Inc.* v. *Gedicke*, 157 N.J. 504, 519, 724 A.2d 783 (1999); 2 Restatement (Third), supra, § 8.01, comment (d) (2), pp. 258–59. Forfeiture of a disloyal employee's compensation, like disgorgement of material benefits received from third parties, is an equitable rather than a legal remedy. *Wenzel* v. *Hopper & Galliher, P.C.*, 830 N.E.2d 996, 1001 (Ind. App. 2005); *Kaye* v. *Rosefielde*, 223 N.J. 218, 231, 121 A.3d 862 (2015); *Burrow* v. *Arce*, 997 S.W.2d 229, 245 (Tex. 1999). It "is derived from a principle of contract law: if the employee breaches the duty of loyalty at the heart of the employment relationship, he or she

may be compelled to forego the compensation earned during the period of disloyalty. The remedy is substantially rooted in the notion that compensation during a period in which the employee is disloyal is, in effect, unearned." *Kaye* v. *Rosefielde*, supra, 233; see also *Burrow* v. *Arce*, supra, 237–38. "Forfeiture may be the only available remedy when it is difficult to prove that harm to [the employer] resulted from the [employee's] breach or when the [employee] realizes no profit from the breach. In many cases, forfeiture enables a remedy to be determined at a much lower cost to litigants. Forfeiture may also have a valuable deterrent effect because its availability signals [employees] that some adverse consequence will follow a breach of fiduciary duty." 2 Restatement (Third), supra, § 801, comment (d) (2), p. 259; see also *Burrow* v. *Arce*, supra, 238. Notably, however, even in cases in which a court orders forfeiture of compensation, the forfeiture normally is apportioned, that is, it is limited to the period of time during which the employee engaged in disloyal activity.[11]

The Restatement (Second) of Agency included provisions specifically addressing the disgorgement of material benefits received from third parties and forfeiture of compensation as a result of an employee's disloyalty. See Restatement (Second), Agency §§ 403, 469 (1958). These rules were expressed in a fashion that suggested that their application was mandatory once a breach of the duty of loyalty was found. The plaintiff relies on these provisions, and on cases in which the remedies appear to have been ordered more or less automatically following such a breach. See, e.g., *Jet Courier Service, Inc.* v. *Mulei*, 771 P.2d 486, 499–500 (Colo. 1989); *ABC Trans National Transport, Inc.* v. *Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d 817, 837–38, 413 N.E.2d 1299 (1980); *Maritime Fish Products, Inc.* v. *World-Wide Fish Products, Inc.*, 100 App. Div. 2d 81, 91, 474 N.Y.S.2d 281 (1984). In the plaintiff's view, once the trial court found that the defendant had engaged in a wilful and intentional breach of the duty of loyalty, the court was required to order forfeiture of the defendant's compensation from the plaintiff, as well as disgorgement of the pay he earned from MK Stucco, and its failure to do so was reversible error. We are not persuaded.

Unlike the Restatement (Second) of Agency, the most recent version of the Restatement discusses these remedies, along with the others previously summarized, more generally in the commentary sections accompanying the rules that outline the duties of agents. See 2 Restatement (Third), supra, § 8.01, comment (d), pp. 257–60; id., § 8.02, comment (e), p. 285. There, they are articulated in less absolute terms. As to forfeiture, the commentary acknowledges and the case notes further indicate that, although it is a well recognized remedy, courts do not apply it in uniform fashion. Id., § 8.01, comment (d) (2), pp. 259–60; see also id., § 8.01, report-

er's notes, pp. 277–80. Moreover, our research discloses a large number of cases expressly recognizing that the remedy is a discretionary one.[12] After review and consideration of the alternatives, we conclude that permitting trial courts to employ forfeiture of compensation or disgorgement of material benefits as a discretionary matter, after consideration of all the facts and circumstances of a particular case, is both the proper and superior approach.

As we previously have explained herein, forfeiture and disgorgement are not legal remedies, but rather, are equitable ones. Generally speaking, "equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 114, 680 A.2d 1314 (1996); see also *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 162, 622 A.2d 536 (1993). "[C]ourts exercising their equitable powers are charged with formulating fair and practical remedies appropriate to the specific dispute. . . . In doing equity, [a] court has the power to adapt equitable remedies to the particular circumstances of each particular case." (Citation omitted; internal quotation marks omitted.) *Kaye* v. *Rosefielde*, supra, 223 N.J. 231. "[E]quitable discretion is not governed by fixed principles and definite rules . . . ." (Internal quotation marks omitted.) Id. Rather, implicit therein "is conscientious judgment directed by law and reason and looking to a just result." (Internal quotation marks omitted.) Id.

Equitable discretion is especially appropriate in cases involving breaches of the duty of loyalty due to their highly fact specific nature. Id., 230–31. "The contexts giving rise to claims of employee disloyalty are so varied that they preclude the mechanical application of abstract rules of law." *Cameco, Inc.* v. *Gedicke*, supra, 157 N.J. 516. "[T]o require an agent to forfeit all compensation for every breach of fiduciary duty, or even every serious breach, would deprive the remedy of its equitable nature and would disserve its purpose of protecting relationships of trust." *Burrow* v. *Arce*, supra, 997 S.W.2d 241. In short, "the remedy of forfeiture must fit the circumstances presented." Id.; see also *American Timber & Trading Co.* v. *Niedermeyer*, 276 Or. 1135, 1155, 558 P.2d 1211 (1976) ("[t]he remedy of restoration of compensation is an equitable principle and its applicability is dependent upon the individual facts of each case").

For the foregoing reasons, we conclude that discretionary application of the remedies of forfeiture and disgorgement is both proper and desirable. In determining whether to invoke these remedies, a trial court should consider all of the facts and circumstances of the case before it. The following list of factors, which we have gleaned from existing jurisprudence, is not

intended to be exhaustive, nor will every factor necessarily be applicable in all cases: the employee's position, duties and degree of responsibility with the employer; the level of compensation that the employee receives from the employer; the frequency, timing and egregiousness of the employee's disloyal acts; the wilfulness of the disloyal acts; the extent or degree of the employer's knowledge of the employee's disloyal acts; the effect of the disloyal acts on the value of the employee's properly performed services to the employer; the potential for harm, or actual harm, to the employer's business as a result of the disloyal acts; the degree of planning taken by the employee to undermine the employer; and the adequacy of other available remedies, as herein discussed. See *Rockefeller* v. *Grabow*, 136 Idaho 637, 643, 39 P.2d 577 (2001); *Kaye* v. *Rosefielde*, supra, 223 N.J. 237; *Cameco, Inc.* v. *Gedicke*, supra, 157 N.J. 521–22; *Futch* v. *McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 609, 518 S.E.2d 591 (1999); *Burrow* v. *Arce*, supra, 997 S.W.2d 243; *Hartford Elevator, Inc.* v. *Lauer*, 94 Wis. 2d 571, 586, 289 N.W.2d 280 (1980). "The several factors embrace broad considerations which must be weighed together and not mechanically applied." *Burrow* v. *Arce*, supra, 243. "[T]he judicial task is to search for a fair and reasonable solution in light of the relevant considerations"; *Cameco, Inc.* v. *Gedicke*, supra, 522; and to avoid unjust enrichment to either party. *Hartford Elevator, Inc.* v. *Lauer*, supra, 586. Additionally, when imposing the remedy of forfeiture of compensation, depending on the circumstances, a trial court may in its discretion apply apportionment principles, rather than ordering a wholesale forfeiture that may be disproportionate to the misconduct at issue. See footnote 11 of this opinion. Conversely, the court may conclude that all compensation should be forfeited because the "employee's unusually egregious or reprehensible conduct pervaded and corrupted the entire [employment] relationship." *Futch* v. *McAllister Towing of Georgetown, Inc.*, supra, 610.

Turning to the case at hand, we conclude that the trial court was aware of the applicable law and properly recognized that its decision whether to order the relief sought by the plaintiff was a discretionary one, and further, that the court properly exercised its discretion to deny that relief. Regarding the court's awareness of the applicable legal principles, the plaintiff comprehensively discussed disgorgement and forfeiture in its posttrial brief, citing to extensive jurisprudence, and it presented oral argument on those remedies at a hearing on its posttrial motions. At the outset of that hearing, the trial court explicitly stated that it had read the parties' briefs. Moreover, in denying the plaintiff's requests for disgorgement and forfeiture, the trial court expressly recognized that it was making a discretionary ruling. In these circumstances, we are not persuaded by the plaintiff's contention that the court failed to

appreciate and apply the applicable law. See *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 130, 981 A.2d 1068 (2009) ("[a]bsent a record that demonstrates that the trial court's reasoning was in error, we presume that the trial court correctly analyzed the law and the facts in rendering its judgment" [internal quotation marks omitted]).

Regarding the trial court's discretionary ruling, the plaintiff did not request apportionment.[13] Rather, it argued to the court that it was entitled to recover all of the compensation that the defendant had received from the plaintiff between 2005 and 2010, plus all of his pay from MK Stucco, which together totaled approximately $1 million. In declining to award those amounts to the plaintiff, the trial court considered some of the factors that we have enumerated herein. Specifically, in its written opinion, the court observed that the defendant's disloyal acts were deliberate and intentional, and it concluded that those acts constituted various other torts. Additionally, the court made findings as to the defendant's managerial responsibilities, his substantial compensation from the plaintiff and the specifics of his disloyal acts. Nevertheless, in regard to the defendant's side work for MK Stucco, the court found that the plaintiff had failed to prove that its business had been harmed as a result of the defendant's actions, either because it had lost bids that it otherwise would have been awarded or because the defendant had performed duties for MK Stucco during the plaintiff's workdays.[14] In regard to the kickback scheme, the court reasoned that the plaintiff had failed to prove that much of what it had alleged had even occurred, and the court concluded that the plaintiff's proven damages were negligible when compared to the large amount the plaintiff was seeking to recover. In the end, the court believed that the plaintiff's other remedies, which had led to a total award of $87,643.71, were adequate. See footnote 8 of this opinion. Notably, the court also denied the defendant's claims for unpaid wages.

In sum, the trial court weighed the specific facts and circumstances of the case to arrive at a fair and reasonable solution that, in the court's view, was not inequitable to either party. Accordingly, it properly exercised its equitable discretion to deny the relief requested. See *Rockefeller* v. *Grabow*, supra, 136 Idaho 643 ("[t]here is no abuse of discretion where the trial court perceives the issue in question as discretionary, acts within the outer limits of its discretion and consistently with the legal standards available . . . and reaches its own decision through an exercise of reason").

## II

We now turn to the claims raised in the defendant's cross appeal, which can be disposed of in short order.

The defendant claims that the trial court's calculation of the damages that the plaintiff suffered as a result of the three proven kickbacks from B-Jan was clearly erroneous. In the defendant's view, the evidence shows that only one half of the $14,400 that the court awarded to the plaintiff was justified, because the other one-half properly was owed to B-Jan for extra work that it actually had performed on the contracts at issue. We do not agree.

In support of this claim, the defendant points to the testimony of Bochenek, which was inconsistent on the point in question and, at some points, seemingly supportive of the view espoused by the defendant on appeal. At other points, however, Bochenek's testimony supports the court's finding, in essence, that the entire amount of each contract increase at issue was an unwarranted overcharge extracted from the plaintiff by the defendant's false representation as to the necessity of extra work. The defendant generally attacks Bochenek's credibility.

It is well established that, even if there are inconsistencies in a witness' testimony, "[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. (Internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 559, 958 A.2d 1214 (2008); see also, e.g., *State* v. *Alfonso*, 195 Conn. 624, 633–34, 490 A.2d 75 (1985) (jury entitled to believe witness even though testimony was "varied and contradictory"). "It is not our role to reevaluate the credibility of witnesses or to overturn factual findings of a [trial] court unless they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 708, 138 A.3d 868 (2016). "If there is any reasonable way that the [trier of fact] might have reconciled the conflicting testimony before [it], we may not disturb [its] [credibility determination]." (Internal quotation marks omitted.) Id.

We conclude that the trial court, on the testimony before it, reasonably could have found that the plaintiff sustained damages in the entire amount of the contract increases at issue. Accordingly, we will not disturb that factual finding.

### III

Finally, Jill Pompa claims that the trial court improperly imposed a constructive trust over her assets, namely, the bank account that she held jointly with the defendant, because there was no evidence that any of the money that the defendant received as kickbacks from B-Jan ever was deposited in that account.[15] We agree.

We review a trial court's decision to impose a constructive trust deferentially. "[T]he trial court's determination must stand unless it is clearly erroneous or

involves an abuse of discretion." *Wendell Corp. Trustee* v. *Thurston,* supra, 239 Conn. 114.

"A court may construct a remedy when an [employee] profits through a breach of fiduciary duty by imposing a constructive trust on the [employer's] profits." 2 Restatement (Third), supra, § 8.01, reporter's notes, p. 273. A "[c]onstructive trust permits the claimant to assert ownership of (i) specifically identifiable property for which the defendant is liable in restitution or (ii) its traceable product . . . . A claimant who can show unjust enrichment, but who cannot identify such property in the hands of the defendant, is not entitled to the remedy of constructive trust." 2 Restatement (Third), Restitution and Unjust Enrichment § 55, comment (g), p. 308 (2011); see also *New Hartford* v. *Connecticut Resources Recovery Authority,* 291 Conn. 433, 466, 970 A.2d 592 (2009) ("A claimant entitled to restitution from property may obtain restitution from any traceable product of that property, without regard to subsequent changes of form. . . . A claimant seeking a constructive trust must identify property in the hands of the [defendant] that represents or embodies . . . property obtained at the claimant's expense or in violation of the claimant's rights." [Citation omitted; internal quotation marks omitted.]).

The plaintiff concedes that there was no evidence that the defendant deposited kickback funds into the joint account. It claims, however, that it is fair to infer that he did, because the defendant testified that he deposited his paychecks from MK Stucco there, and there was no evidence that he and Jill Pompa had other bank accounts. We are not persuaded.

Although a fact finder is entitled to draw fair and reasonable inferences from the evidence presented, the inference urged by the plaintiff falls short of that standard and amounts to mere conjecture. See *State* v. *Jordan,* 314 Conn. 354, 385, 102 A.3d 1 (2014) (inferences drawn must be reasonable and not "based on possibilities, surmise or conjecture" [internal quotation marks omitted]). The only evidence regarding the kickbacks was that they were paid to the defendant in cash. It is no more likely that the defendant would choose to deposit this cash into his bank account than it is that he would retain and make other use of it. Consequently, the trial court's imposition of a constructive trust is unsupported by any evidence and cannot stand.

In sum, the trial court acted within its discretion and with adequate evidentiary support in awarding damages, but refusing to order that the plaintiff forfeit all of the compensation that he received during his period of disloyalty, both from the plaintiff and from MK Stucco. The court's imposition of a constructive trust was improper because the plaintiff failed to prove that the kickbacks received by the defendant were traceable to the joint bank account maintained by the defendant

and Jill Pompa.

The judgment is reversed only with respect to the imposition of a constructive trust on the joint bank account of the defendant and Jill Pompa and the case is remanded with direction to vacate that portion of the award; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] Jill Pompa also was named as a party defendant. For clarity, we refer herein to William Pompa as the defendant and to Jill Pompa by name.

[2] This division "built and installed quality facades for commercial and residential applications." It provided, inter alia, stucco for the exterior of buildings.

[3] Some of the 2010 income from MK Stucco was earned after the defendant had ceased working for the plaintiff.

[4] The evidence showed that, of the thirty-five jobs that the defendant had estimated for MK Stucco between 2005 and 2010, eight were jobs on which the plaintiff also had bid.

[5] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[6] Around the same time that he brought the action against the defendant and Jill Pompa, the plaintiff also brought separate actions against MK Stucco and another subcontractor, General Construction System, LLC, and those companies' principals, alleging that they had aided and abetted the defendant's breaches of the duty of loyalty by participating in the kickback scheme. MK Stucco filed a separate action against the plaintiff and Valerio, and General Construction System, LLC, and its principal filed counterclaims, all alleging that the plaintiff had failed to pay them for work they had performed. The foregoing actions were tried together with the present case.

[7] At the close of the plaintiff's case on liability, the trial court had dismissed its claims of aiding and abetting against MK Stucco, General Construction System, LLC, and their principals due to lack of evidence. Thereafter, before the trial concluded, the plaintiff entered confidential settlements with MK Stucco, General Construction System, LLC, and their principals on their claims and counterclaims, which then were withdrawn. In its memorandum of decision addressing the claims against the defendant, the trial court concluded, consistently with its dismissals of the aiding and abetting claims, that the defendant had not breached his duty of loyalty by requiring kickbacks from MK Stucco, General Construction System, LLC, or their principals.

[8] The trial court subsequently awarded the plaintiff attorney's fees of $24,609.75 and prejudgment interest of $19,833.96. See General Statutes § 37-3a. It further reduced the amount of the constructive trust from $43,200 to $14,400, reasoning that only the latter amount, representing the proven kickbacks, had been deposited into the joint account of the defendant and Jill Pompa.

[9] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." 1 Restatement (Third), Agency § 1.01, p. 17 (2006). Agency principles apply in a wide range of relationships, including those between employers and employees. Id., comment (c), p. 19. The duties stemming from an agency relationship, however, are not necessarily required of all employees. "The scope of the duty of loyalty that an employee owes to an employer may vary with the nature of their relationship. Employees occupying a position of trust and confidence, for example, owe a higher duty than those performing low-level tasks." (Internal quotation marks omitted.) *Kaye* v. *Rosefielde*, 223 N.J. 218, 230, 121 A.3d 862 (2015); see also *NCMIC Finance Corp.* v. *Artino*, 638 F. Supp. 2d 1042, 1082 (S.D. Iowa 2009) (one "in a position of responsibility is considered [a]n agent [due to a] greater authority to act for the principal, such as negotiating contracts, while [a nonagent] employee typically renders services at the direction of the employer" [internal quotation marks omitted]); *Jet Courier Service, Inc.* v. *Mulei*, 771 P.2d 486, 492 n.10 (Colo. 1989) (duty of loyalty likely applicable only "where an employee has sufficient authority to act for the employer or [has] access to confidential information to make apt the principal/agent analogy").

[10] The facts of a particular case may call for an injunction or an accounting,

*Cameco, Inc.* v. *Gedicke*, 157 N.J. 504, 518, 724 A.2d 783 (1999); see also 2 Restatement (Third), supra, § 8.01, comment (d) (1), p. 258; see, e.g., *Town & Country House & Homes Service, Inc.* v. *Evans*, supra, 150 Conn. 318. Additionally, the breach of the duty of loyalty may constitute a material breach of the parties' employment agreement, privileging the employer to terminate that agreement prematurely. *Breen* v. *Larson College*, supra, 137 Conn. 157; see also 2 Restatement (Third), supra, § 801, comment (d) (1), p. 258. Moreover, the employer may seek recovery of damages directly attributable to the employee's breach. *Cameco, Inc.* v. *Gedicke*, supra, 518; see also 2 Restatement (Third), supra, § 801, comment (d) (1), p. 258; compare *News America Marketing In-Store, Inc.* v. *Marquis*, supra, 86 Conn. App. 535–36 (no damages recoverable in tort for breach of duty of loyalty when no harm to plaintiff is proven). The damages awarded by the trial court in the present case in connection with the defendant's kickback scheme are one example. See, e.g., *Henry* v. *Concord Limousine, Inc.*, Docket No. 13-CV-0494 (JS) (WDW), 2014 WL 297303, *5 (E.D.N.Y. January 24, 2014) (employer may recover bribes or kickbacks received by disloyal employee); *Twenty First Century L.P.I.* v. *LaBianca*, 19 F. Supp. 2d 35, 41 (E.D.N.Y. 1998) (construction director and supervisor who colluded with contractors to submit inflated invoices to owner in exchange for kickbacks held liable for harm caused directly to owner by scheme). Generally, to recover money damages, the employer must prove that they were sustained and that they were proximately caused by the employee's breach. *Twenty First Century L.P.I.* v. *LaBianca*, supra, 41.

[11] See Restatement (Second), Agency § 469, comment (b), p. 400 (1958); id., § 456, comment (b), pp. 375–76 (operating together to limit forfeiture to period of disloyalty when employee receives compensation that is apportioned to periods of time or specified items of work). In short, if an employee's disloyalty is confined to particular pay periods, so is the required forfeiture of compensation. See *Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 300–302 (2d Cir. 2006) (applying New York law); *Kaye* v. *Rosefielde*, supra, 223 N.J. 237–38; *Jet Courier Service, Inc.* v. *Mulei*, 771 P.2d 486, 499–500 (Colo. 1989). Conversely, if the compensation received by a disloyal employee is *not* apportioned to particular time periods or items of work, and his or her breach of the duty of loyalty is wilful and deliberate, forfeiture of his or her entire compensation may result. See *ABC Trans National Transport, Inc.* v. *Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d 817, 837–38, 413 N.E.2d 1299 (1980).

[12] See *Janssens* v. *Freedom Medical, Inc.*, Docket No. JFM-10-2042, 2011 WL 1642575, *6 (D. Md. April 29, 2011) (applying Pensylvania law); *In re Tri-Star Technologies Co.*, supra, 257 B.R. 637 (applying Massachusetts law); *Rockefeller* v. *Grabow*, 136 Idaho 637, 647, 39 P.3d 577 (2001); *Kaye* v. *Rosefielde*, supra, 223 N.J. 231; *Futch* v. *McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 607, 518 S.E.2d 591 (1999); *American Timber & Trading Co.* v. *Niedermeyer*, 276 Or. 1135, 1155, 558 P.2d 1211 (1976); *Burrow* v. *Arce*, supra, 997 S.W. 242–43; *Cogan* v. *Kidder, Mathews & Segner, Inc.*, 97 Wash. 2d 658, 667, 648 P.2d 875 (1982); *Hartford Elevator, Inc.* v. *Lauer*, 94 Wis. 2d 571, 586, 584–85, 289 N.W.2d 280 (1980).

[13] Valerio testified that the plaintiff was paid $1600 per week. In other words, his compensation was apportioned to specific periods of time. Furthermore, there was no evidence that the defendant's disloyalty permeated every week in 2005 through 2010; rather, it appears that it was sporadic.

[14] The evidence showed that, between 2005 and 2010, the defendant had estimated only thirty-five jobs for MK Stucco. See footnote 4 of this opinion. In contrast, the defendant testified that he had worked on approximately 250 jobs per year for the plaintiff, while Valerio estimated that it was between 100 and 200. The total compensation received by the defendant from MK Stucco during this period was a small fraction of that which he received from the plaintiff.

[15] Jill Pompa also contests the propriety of the constructive trust on the basis that there was no evidence or finding of any wrongdoing on her part. Because we agree with her initial claim, we need not address this alternative one.